No. 02-135

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 263

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DANIEL D. HAMILTON,

Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and for the County of Treasure,
The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

George T. Radovich, Attorney at Law, Billings, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

Gary Ryder, Treasure County Attorney, Hysham, Montana

Submitted on Briefs:  June 13, 2002

Decided:  November 26, 2002

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Following his conviction for driving under the influence of alcohol (DUI) in Treasure County Justice Court, the Defendant, Daniel D. Hamilton, appealed to the District Court for the Sixteenth Judicial District in Treasure County where he received a nonjury trial *de novo*. Following that trial, he was again convicted of DUI. Hamilton appeals his conviction. We affirm the judgment of the District Court.

¶2 Hamilton raises two issues on appeal. We restate the issues as follows:

¶3 1. Did the District Court err when it admitted evidence of blood test results that were gathered approximately three hours after the alleged illegal act occurred?

¶4 2. Was the evidence before the District Court sufficient to support Hamilton's DUI conviction?

FACTUAL AND PROCEDURAL BACKGROUND

¶5 Hamilton was injured in a single car accident while traveling on Horse Creek Road in Treasure County, Montana, sometime before 12:50 a.m. on July 3, 2001. The road was wet and consisted of three compacted wheel tracks, separated by loose gravel, with barrow ditches on both sides. Hamilton attempted to navigate around a parked vehicle, which occupied part of the roadway, by switching from the right and center travel lane to the left and center travel lane. He lost control of his truck in the loose gravel and rolled his vehicle into the ditch on the right-hand side of the road.

2

¶6 Treasure County Sheriff, Steve Wilkins, was notified of the accident at approximately 12:50 a.m. and arrived at the scene at about 1:30 a.m. When he arrived at the scene, he found Hamilton in the overturned pickup truck, conscious and complaining of neck pain. Wilkins observed that Hamilton smelled of alcohol but found no alcoholic beverage containers in the truck. When asked by Wilkins, Hamilton admitted that he had been drinking at the Spring Creek Bar earlier that evening. An ambulance carrying two Emergency Medical Technicians (EMTs) arrived around 2:05 a.m. Both EMTs noted that Hamilton smelled of alcohol and testified to that effect at trial. Montana Highway Patrol Officer Jeff Sorenson arrived at the accident at 2:10 a.m. and began to conduct an accident scene investigation. Sorenson estimated that Hamilton was traveling approximately 40 miles per hour prior to the accident based on "drag marks" and damage to the vehicle. He was of the opinion that Hamilton was driving too fast for the conditions.

¶7 After being extracted from the vehicle by the "Jaws of Life," Hamilton was taken to the Hardin Hospital for treatment. The EMTs reported that Hamilton was conscious, disoriented as to time and place, and exhibited abnormal behavior en route to the hospital. Montana Highway Patrol Officer Steve Weisnewski greeted Hamilton at the hospital at around 3:10 a.m. and noted that Hamilton smelled of alcohol and had bloodshot and glossy eyes. Hamilton gave a blood sample at 3:54 a.m., which was sent to the Montana Crime Lab for analysis. Over three hours had passed since the Wilkins initially responded to the accident. The Lab determined that Hamilton had a

3

Blood Alcohol Concentration (BAC) of 0.26 at the time the blood was drawn.

¶8    Following Hamilton's conviction in Justice Court and appeal to the District Court, a non-jury trial was held on April 25, 2001. The State offered testimony from seven witnesses during its case. Sheriff Wilkins, the two EMTs, and Officer Weisnewski testified that Hamilton smelled strongly of alcohol on the evening in question. Lynn Kurtz, an expert from the Montana Crime Lab, testified that while he could not be certain what Hamilton's BAC was when he was driving before the accident, Hamilton had to have consumed a large quantity of alcohol before the accident in order to have a BAC of 0.26 three hours later.

¶9    On November 29, 2001, the District Court issued its Findings of Fact, Conclusions of Law and Order, and found Hamilton guilty of driving while under influence of alcohol pursuant to § 61-8-401, MCA. Hamilton was sentenced to six months in jail, with all but one day suspended, ordered to pay a $500 fine, and ordered to complete an alcohol treatment program.

STANDARD OF REVIEW

¶10  This Court reviews a district court's evidentiary ruling for an abuse of discretion. *State v. Enright*, 2000 MT 372, ¶ 21, 303 Mont. 457, ¶ 21, 16 P.3d 366, ¶ 21. A district court has broad discretion to determine whether evidence is relevant and admissible, and absent an abuse of discretion, this Court will not overturn that court's ruling. *Enright*, ¶ 21. We review the sufficiency of evidence to support a guilty verdict in a criminal

case to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Johnson,* 1998 MT 289, ¶ 41, 291 Mont. 501, ¶ 41, 969 P.2d 925, ¶ 41.

DISCUSSION

ISSUE 1

¶11 Did the District Court err when it admitted evidence of blood test results that were gathered approximately three hours after the alleged illegal act occurred?

¶12 Hamilton contends that the District Court abused its discretion when it admitted results of the blood test taken at the Hardin Hospital at 3:54 a.m. as evidence. He maintains that the three hours that elapsed between the time he was in physical control of his truck and the time the blood was drawn violated the requirement that a blood sample be taken "within a reasonable time of the alleged act."

¶13 In Montana, it is unlawful for a person to drive a motor vehicle on public roadways while under the influence of alcohol. Section 61-8-401(1), MCA. The results of a blood test that is taken within a reasonable time of the alleged act give rise to an inference of intoxication at the time of the act. Section 61-8-401(4), MCA. This Court has not had the opportunity to consider what constitutes a "reasonable time" pursuant to § 61-8-401, MCA.

¶14 When interpreting statutes, this Court's only function is to give effect to the intent of the Legislature. *State v. McNally*, 2002 MT 160, ¶ 19, 310 Mont. 396, ¶ 19, 50 P.3d 1080, ¶ 19 (citations omitted). While legislative intent must first be determined from the plain meaning of the words in the statute, when the plain meaning of a statute is subject to more than one reasonable interpretation, we will examine the legislative history

6

to aid our interpretation. *McNally*, ¶ 19 (citations omitted). Moreover, in determining legislative intent, this Court will construe criminal statutes "with a view to effect their object and promote justice." *McNally*, ¶ 19 (citing *State v. Goeble*, 2001 MT 73, ¶ 17, 305 Mont. 53, ¶ 17, 31 P.3d 335, ¶ 17) (citations omitted).

¶15 In 1997, Montana's DUI statutes were amended in response to disparate district court interpretations of when blood tests were admissible as evidence that a person was operating a motor vehicle under the influence of alcohol. Section 61-8-401(4), MCA (1995), prior to its amendment provided:

> (4)     Upon trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person at the time alleged, as shown by analysis of the person's blood, urine, or breath, shall give rise to the following inferences . . . .

Literal interpretation of the statute by some district courts created an impossible obligation for the arresting officer. While delay between the time a person was in control of his or her vehicle and the time a blood test was administered was inevitable, strict interpretation of the pre-1997 language could preclude a blood test taken 30 minutes after a person was stopped because the test would not literally establish what a person's BAC was at "the time alleged."

¶16 The Legislature amended the problematic language in 1997 to provide as follows:

> (4)     Upon trial of any civil or criminal action or proceeding arising out of acts alleged to have been

7

committed by any person driving or in actual physical control of a vehicle while under the influence of alcohol, the concentration of alcohol in the person **at the time of a test**, as shown by analysis of a sample of the person's blood or breath drawn or taken **within a reasonable time after the alleged act**, gives rise to the following inferences:

. . . .

(c) If there was at that time an alcohol concentration of 0.10 or more, it may be inferred that the person was under the influence of alcohol. The inference is rebuttable.

Section 61-8-401(4), MCA (amending § 61-8-401(4), MCA (1995)).

¶17 The Senate Judiciary Committee's notes express that the language was intended to prevent the exclusion of blood test results simply because time had elapsed between the alleged act and the test. Specifically, the notes refer to adverse court rulings which suppressed blood tests that were taken more than two hours after arrest for the alleged act. The plain language and Senate Judiciary Committee's notes indicate that the Legislature intended to create a broad and flexible statute, and left determination of what constitutes "within a reasonable time after the alleged act" to the discretion of the courts. Furthermore, defining "reasonable time" broadly effectuates the statute's object of keeping drunk drivers off Montana's roads and promotes justice. Therefore, we hold that the statute requires a court to look at the totality of the circumstances to determine whether a blood test was taken within a reasonable time of the alleged act. Those circumstances must necessarily include the foundation laid to establish the

8

probative value of the test results and the purpose for which the results are admitted.

¶18 In this case, Hamilton was involved in a single-car accident on a rural road and treatment of his injuries took priority over establishing the level of his intoxication. The "Jaws of Life" were required to extricate Hamilton from his vehicle. Once removed, he was taken to the hospital for treatment of his broken neck. When Hamilton arrived at the hospital, two hours had passed since Wilkins responded to the accident, and one and one half hours had passed since he first arrived on the scene. The blood test was taken forty minutes after Hamilton arrived at the hospital, as soon as it was practicable under the circumstances.

¶19 During cross examination, Kurtz admitted that various factors such as fatty foods in the stomach, the amount of alcohol consumed, when alcohol was consumed, and a person's drinking history can effect the absorption rate of alcohol. He opined that these factors make determination of Hamilton's exact BAC at the time he went off the road impossible to calculate. Hamilton suggests these factors, in combination with the three hour time lapse, make the blood test unreliable. However, it is important to keep in mind the purpose for which the test results were admitted by the District Court. The District Court made the following finding number 11 based on Kurtz's testimony:

> Lynn Kurz, a forensic scientist with the Montana Crime Lab, testified to the test and indicated that although, because of many unknown variables, one cannot extrapolate backwards to determine a defendant's blood alcohol level at the time of the accident, since Mr. Hamilton was incapacitated from approximately 1 a.m. to the time of the test at 3:54 a.m., he would have had to have consumed

9

a large amount of alcoholic beverages prior to 1 a.m. in order to be at .26 at 3:54 a.m.  Mr. Kurz also testified that an individual's blood alcohol usually peaks within a half hour to an hour and a half following consumption.

Based on that finding, the District Court concluded that the evidence was admissible for the following purpose:

16.  The results of the test are relevant under Rule 402, M.R.Evid., because the test results, in conjunction with the other evidence, shows that Mr. Hamilton had had a great deal to drink prior to his accident, and this makes it more likely that his ability to drive was impaired as a result of such drinking which is an issue in the case.

17.  While the State has not been able to show that Mr. Hamilton had any particular blood alcohol level at the time of the accident or when driving immediately preceding the accident, the State has shown that Mr. Hamilton had a good deal to drink prior to the accident. . . .

¶20  Rule 401, M.R.Evid., provides: "Relevant evidence means any evidence having any tendency that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evidence is relevant if it will have any value, as determined by logic and experience, in proving the proposition for which it is offered.  *State v. Duffy*, 2000 MT 186, ¶ 43, 300 Mont. 381, ¶ 43, 6 P.3d 453, ¶ 43.

¶21 Because the test was not unreasonably delayed by the investigating officers, under the circumstances in this case, and because the test results were not used to draw any inference regarding Hamilton's blood alcohol level at the time of his accident, but instead were  considered by the District Court for the limited purpose set forth in Finding No. 11, which purpose was fully supported by the foundational testimony, we conclude that the

10

District Court did not abuse its discretion by admitting and considering that evidence even though gathered approximately three hours after the act complained of.

¶22 Furthermore, the results of the blood test, which indicated that Hamilton's BAC was at 0.26, when considered in combination with Kurtz's foundational testimony, tended to make it more probable that Hamilton was under the influence of alcohol when operating his vehicle and was relevant despite the fact the test was taken three hours after the accident. We hold the District Court did not abuse its discretion when it concluded the blood test was relevant and admissible evidence.

ISSUE 2

¶23 Was the evidence before the District Court sufficient to support Hamilton's DUI conviction?

¶24 Hamilton maintains that the District Court abused its discretion when it based his conviction on the evidence of the blood test alone. He brings to our attention multiple inconsistencies between Officer Sorenson's and Officer Weisnewski's testimony and inconsistencies between the District Court's findings and the record. However, we conclude, based on the scope of our review, that the cited inconsistencies are irrelevant.

¶25 The court heard four witnesses testify that Hamilton smelled strongly of alcohol; Sheriff Wilkins testified that Hamilton admitted he had been drinking prior to the accident; Officer Sorenson testified that Hamilton appeared to be intoxicated at the hospital; Hamilton demonstrated unusual behavior in the ambulance; Kurtz testified that Hamilton would have had to consume a large

11

amount of alcohol prior to the accident to have a BAC of 0.26 at 3:54 a.m.; and Hamilton was unable to negotiate a parked car on the side of the road. We conclude that there was sufficient evidence before the District Court to support Hamilton's conviction for driving while under influence of alcohol.

¶26 Accordingly, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE