No. 00-756

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 179

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

JONATHAN WAYNE VANDERSLOOT,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Big Horn, Cause No. DC 99-47
The Honorable Blair Jones, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        James L. Vogel, Hardin, Montana

        For Respondent:

        Mike McGrath, Montana Attorney General, Carol E. Schmidt, Assistant
Montana Attorney General, Helena, Montana; Christine A. Cooke, Big Horn
County Attorney, Curtis Bevolden, Deputy Big Horn County Attorney,
Hardin, Montana

Submitted on Briefs: October 11, 2001

Decided:  July 10, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Jonathan Wayne Vandersloot challenges his jury conviction on the charge of criminal sale of dangerous drugs to a fellow jail inmate and appeals two evidentiary rulings of the Thirteenth Judicial District Court, Big Horn County.  We affirm.

¶2       Vandersloot raises the following issues:

¶3      1.  Did the District Court abuse its discretion by allowing the testimony of Trent Burke?

¶4      2.  Did the District Court abuse its discretion by allowing Vandersloot's medication sign-out sheet into evidence?

¶5      3.  Did sufficient evidence support the jury's verdict?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6      On August 15, 1999, Trent Burke, an inmate trustee at the Big Horn County Jail in Hardin, Montana, reported witnessing Vandersloot and Samuel Big Hair, Jr., snorting lines of pinkish-white powder in the jail's dayroom.  Although the jailors on duty observed nothing suspicious on the surveillance monitors, the section of the dayroom in which Vandersloot and Big Hair allegedly sat was a surveillance "dead zone" that was not covered by the dayroom's video camera.  When Big Hair's probation officer questioned him regarding his reported drug use, Big Hair admitted that he had stolen two "black and orange capsules" from the jail's medication box, swallowed one and snorted the other.  An investigation of Burke's allegations by Deputy Sheriff Carey Hert revealed that Dexedrine

2

was the only inmate medication at the time of the alleged snorting that closely matched Big Hair's capsule description. Nineteen-year-old Vandersloot was the only inmate with a prescription for Dexedrine, which had been prescribed to treat his attention deficit disorder. Big Hair denied that Vandersloot sold, bartered or otherwise provided him with Dexedrine or any other drug.

¶7 The Big Horn County prosecutor charged Vandersloot with criminal sale of dangerous drugs in violation of § 45-9-101, MCA, on September 10, 1999. Vandersloot pled not guilty and was represented by court-appointed counsel. The District Court denied his motion *in limine* to exclude the testimony of jail trustee Burke and a two-day trial ensued in February 2000. The jury returned a guilty verdict. The court sentenced Vandersloot to a 25-year term in Montana State Prison to run consecutively to his 20-year term on two prior counts of burglary.

**STANDARD OF REVIEW**

¶8 This Court reviews a district court's evidentiary rulings for an abuse of discretion. *State v. Hamilton,* 2002 MT 263, ¶ 10, 312 Mont. 249, ¶ 10, 59 P.3d 387, ¶ 10 (citing *State v. Enright,* 2000 MT 372, ¶ 21, 303 Mont. 457, ¶ 21, 16 P.3d 366, ¶ 21). The authority to grant or deny a motion *in limine* "rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary to afford a fair trial for all parties." *State v. Krause,* 2002 MT 63, ¶ 32, 309 Mont. 174, ¶ 32, 44 P.3d 493, ¶ 32 (quoting *Hulse v. State, Dept. of Justice,* 1998 MT 108, ¶ 15, 289 Mont. 1, ¶ 15, 961 P.2d 75, ¶ 15). A district court has broad discretion to determine whether evidence is relevant and admissible,

and absent an abuse of discretion, this Court will not overturn that court's ruling. *Hamilton*, ¶ 10. We review the sufficiency of the evidence to support a jury verdict in a criminal trial to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Martin*, 2001 MT 83, ¶ 17, 305 Mont. 123, ¶ 17, 23 P.3d 216, ¶ 17 (citing *State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, ¶ 7, 2 P.3d 242, ¶ 7).

**Issue 1**

¶9 **Did the District Court abuse its discretion by allowing the testimony of Trent Burke?**

¶10 Vandersloot contends that Burke concocted his testimony about inmate drug use in order to gain personal advantage and early release from jail. He does not assert that Burke was not competent to testify, but argues that as a "convicted liar" Burke was unfit to present his story to the jury. Vandersloot claims that the District Court erred by denying his motion *in limine* to exclude Burke's testimony at trial on the grounds that its probative value was outweighed by its tendency to mislead the jury.

¶11 Burke had been arrested in Big Horn County in October 1997, and charged with second offense DUI; possession of alcohol in a commercial vehicle; and falsification of commercial records. He pled not guilty but failed to appear at trial. The court sentenced Burke *in absentia* to six-months in the county jail and a $1560 fine. Over one year after Burke's conviction, the court issued a bench warrant for his arrest. He was apprehended in

4

Mineral County and returned to Big Horn County to serve his sentence in August 1999.

¶12 At the Big Horn County Jail, Burke became an inmate trustee, which entailed completing certain housekeeping tasks, assisting with food and medication delivery and performing other services for the jailors. As a trustee, Burke was free to move around the facility and he was given a private cell. On August 15, 1999, which was Burke's first day as a trustee, he reported witnessing Vandersloot and Big Hair snorting a powdery substance in the jail's dayroom. On September 27, 1999, the Big Horn County prosecutor deposed Burke to preserve his testimony. Later that day, Burke appeared before the court and entered guilty pleas on the charges for which he had been convicted *in absentia* 15 months earlier. The court resentenced Burke, which resulted in his fine being forgiven, over four months being cut from his term and his release from jail that same day.

¶13 On appeal, Vandersloot cites no authority to support his contention that evidence should be excluded from the jury when it appears that the prosecution wrested testimony from a witness in exchange for a "get out of jail free" card. Instead, he relies upon *Havens v. State* (1997), 285 Mont. 195, 945 P.2d 941, to illustrate an instance when this Court excluded probative evidence because it was likely to mislead and confuse the jury.

¶14 In *Havens,* an accident victim sought to prove that a city negligently failed to erect a stop sign at a dangerous intersection. As a defense, the city attempted to enter evidence of the driver's alcohol consumption prior to the accident. This Court held that, in the absence of testimony linking the driver's intoxication as a contributing cause of the accident, evidence of alcohol intoxication was irrelevant, unfairly prejudicial and likely to confuse the

jury. *Havens*, 285 Mont. at 200, 945 P.2d at 944.

¶15 Vandersloot's reliance on *Havens* as support for excluding Burke's testimony is misplaced. In *Havens*, this Court excluded evidence of the plaintiff's alcohol consumption on the basis of lack of relevancy, likely prejudicial effect on jurors and tendency to divert or confuse jurors regarding the negligence of the city, which was the only issue presented for jury determination at trial. Nothing in our *Havens* decision indicates that a jury should be shielded from relevant evidence presented by a witness who may be motivated to provide false testimony.

¶16 Our rules of evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. Relevant evidence is generally admissible. Rule 402, M.R.Evid. However, Rule 403, M.R.Evid., creates an exception to the general admissibility standard of Rule 402 by allowing relevant evidence to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ."

¶17 Unlike evidence of the plaintiff's alcohol consumption in *Havens*, Burke's eyewitness testimony was clearly relevant to the State's case against Vandersloot. The exception created by Rule 403, M.R.Evid., for the exclusion of relevant evidence due to its prejudicial or potentially misleading impact on the jury, does not embrace competent eyewitness testimony describing the commission of the offense for which the defendant is on trial. In denying the motion *in limine*, the District Court invited Vandersloot to question Burke

6

thoroughly on cross-examination regarding his criminal history and whether a link existed between his sentence reduction and his testimony against Vandersloot. Vandersloot took advantage of this opportunity and fully explored Burke's motives for testifying against him.

¶18 As we have stated on many occasions, the trier of fact is in the best position to observe the witnesses, including their demeanor and credibility. *Matter of Seizure of $23,691.00 in U.S. Currency* (1995), 273 Mont. 474, 485, 905 P.2d 148, 155 (citing *State v. Black* (1995), 270 Mont. 329, 337, 891 P.2d 1162, 1167). See also *State v. Flack* (1993), 260 Mont. 181, 189, 860 P.2d 89, 94. A witness's appreciation of his duty to tell the truth is not necessarily diminished by prior violations of the law. *State v. Haskins* (1994), 269 Mont. 202, 208, 887 P.2d 1189, 1193. The weight of the evidence and the credibility of the witnesses are exclusively the province of the trier of fact and, in the event of conflicting evidence, it is within the province of the trier of fact to determine which will prevail. *Flack,* 260 Mont. at 189, 860 P.2d at 94. Therefore, we conclude that Burke's testimony was properly before the jury for the jury to determine witness credibility and the weight of the evidence. We affirm that the District Court did not abuse its discretion by denying Vandersloot's motion *in limine*.

**Issue 2**

¶19 **Did the District Court abuse its discretion by allowing Vandersloot's medication sign-out sheet into evidence?**

¶20 At trial, the State questioned Deputy Hert, the investigating officer, regarding the Big

7

Horn County Jail's medication sign-out sheet for Vandersloot's Dexedrine prescription. Defense counsel raised the following objection: "Your Honor, I'm going to ask that this be in evidence before it's testified from. I don't believe this individual's the keeper of this record. If I could *voir dire* him and perhaps bring out the nature of my objection." The court then allowed defense counsel to question the witness, which established that Deputy Hert played no role in the creation of the medication sign-out sheet; did not observe Vandersloot signing the sheet; and could not verify the dates on which the signatures were made.

¶21 Following defense counsel's questioning, the District Court invited the State to lay additional foundation for the admission of the medication sign-out sheet into evidence. Deputy Hert testified that the sheet was kept in the regular course of business at the Big Horn County Jail and that jailors followed an established protocol in creating this record to document the delivery of Vandersloot's prescription medication while he was a jail inmate. The State then moved for the admission of the sheet into evidence. Defense counsel did not object or assert that the foundation laid by the prosecutor was inadequate. The court overruled Vandersloot's earlier objection and admitted the sign-out sheet into evidence without further comment by defense counsel.

¶22 Vandersloot argues on appeal that the District Court erred by allowing the State to enter the medication sign-out sheet into evidence through the testimony of Deputy Hert because the prosecution failed to qualify Deputy Hert as the custodian of the record; Deputy Hert could not identify or verify any signatures; and Deputy Hert had limited knowledge of

8

the process involved in creating the record. Vandersloot also contends that the sheet did not qualify under the business records exception to the hearsay rule because subsequent testimony established that the protocol for creating the document was not consistently followed.

¶23 Whatever problems might have existed with the admission of the medication sign-out sheet into evidence, the record must show that defense counsel raised a timely objection. An appellant must establish that an objection was made at trial on the same basis as the error asserted on appeal. *State v. Davis,* 2000 MT 199, ¶ 38, 300 Mont. 458, ¶ 38, 5 P.3d 547, ¶ 38. Requiring a defendant to specifically raise the objection at trial gives the prosecution and trial court an opportunity to avoid or correct the purported error. *Davis,* ¶ 38. Failure to make a timely objection during trial constitutes a waiver of the objection, except as provided in § 46-20-701(2), MCA. Section 46-20-104(2), MCA. Section 46-20-701(2), MCA, states that jurisdictional or constitutional errors may be excepted from the waiver rule under certain circumstances.

¶24 Vandersloot argues that the District Court violated his constitutional right to confront and cross-examine adverse witnesses by admitting the medication sign-out sheet. He urges this Court to extend the protections afforded criminal defendants in *State v. Clark*, 1998 MT 221, 290 Mont. 479, 964 P.2d 766, to the facts of this case. In *Clark*, we held that a criminal defendant's fundamental right to confront adverse witnesses at trial encompassed the technicians at the State Crime Lab because the incriminating results of tests conducted on evidence are often a critical component of the State's case that carries extraordinary weight

9

in a criminal trial. *Clark*, ¶ 25. We also held in *Clark* that due process requires the State to shoulder the burden of presenting State Crime Lab technicians as expert witnesses for cross-examination regarding testing methods, findings and chain of custody. *Clark*, ¶ 29.

¶25 The sign-out sheet for Vandersloot's Dexedrine prescription was generated by Big Horn County Jail personnel to verify the daily delivery of medication over a period of weeks. The jailors generally followed an established protocol in creating the document to insure that the inmate received his prescribed medication according to schedule. Vandersloot was on notice that the prosecution planned to enter the sheet into evidence. Had he reason to question specific jailors regarding the delivery of medication or about the creation of the sheet, he could have subpoenaed them as trial witnesses. While the foundation laid for the admission of Vandersloot's medication sign-out sheet arguably may have been less than adequate, the State's burden in presenting the sheet simply does not require the trial testimony of every jailor whose acknowledgment appears on the form.

¶26 In *Clark*, we held that the special hearsay exception for State Crime Lab reports was an unconstitutional abrogation of the right to confront one's accusers and that due process required the State to present Lab technicians as expert witnesses for cross-examination. Vandersloot offers this Court no rational basis for extending the constitutional protections afforded criminal defendants faced with incriminating State Crime Lab reports to the facts of this case. Moreover, we perceive no constitutional violation of Vandersloot's fundamental rights to due process or "to meet the witnesses against him face to face," ensured by Article II, Section 17 and Section 24 of the Montana Constitution, by the

admission of his medication sign-out sheet into evidence.

¶27    After the District Court overruled defense counsel's non-specific objection to the direct examination of Deputy Hert regarding Vandersloot's medication sign-out sheet, defense counsel asserted no new objection on the basis of inadequate foundation, hearsay, or any other grounds.  The court then entered the sheet into evidence and defense counsel again failed to object.  We conclude that defense counsel, by remaining silent, waived his objection to the admission of the sheet and failed to preserve an issue for appeal.  We hold that the District Court did not abuse its discretion when it allowed the medication sign-out sheet into evidence in the absence of a timely objection.

### Issue 3

¶28    **Did sufficient evidence support the jury's verdict?**

¶29    Vandersloot claims that insufficient evidence supported his conviction on the charge of criminal sale of dangerous drugs.  We review the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.   *Martin*, ¶ 17 (citation omitted).

¶30    Big Hair testified that he stole two "black and orange capsules" from the Big Horn County Jail medication box, the contents of which, in part, he snorted.  Burke stated that he observed Big Hair and Vandersloot snorting lines of a pink-colored powder in the jail dayroom on August 15, 1999.  Frank Tikka, another jail inmate, testified that he saw Big Hair using a straw to snort a powder in the dayroom that same day.

¶31    Deputy Hert conducted a follow-up investigation, which revealed that Vandersloot

was the only inmate of the Big Horn County Jail on August 16, 1999, who had a prescription for a medication that closely matched Big Hair's description of black and orange capsules. Pharmacist Don Raymond testified that Vandersloot's prescription for Dexedrine was prepared as small white and pink pellets packaged in capsules that are half-black and half-clear. Raymond stated that the pellets may be crushed into a pink-colored powder.

¶32 According to the medication sign-out sheet, Vandersloot was issued a new 30-dose bottle of Dexedrine on July 15, 1999. Deputy Hert seized the bottle on August 16, 1999. He testified that the seized bottle contained three capsules, which he retained in police custody. Vandersloot's Dexedrine sign-out sheet showed that 27 capsules were delivered to Vandersloot between July 15 and August 16, 1999. Deputy Hert stated that he had accounted for all 30 Dexedrine capsules from Vandersloot's prescription bottle, which refuted Big Hair's claim that he stole the black and orange capsules from the jail's medication box.

¶33 The prosecution entered into evidence Big Hair's written request to the jailors that $30 be transferred from his account to Vandersloot's account on August 12, 1999. Big Hair stated that this money was to pay for audio tapes that he ordered through Vandersloot's mother. Vandersloot's mother testified that she had not been asked to order any tapes for Big Hair. Furthermore, Vandersloot never returned the money to Big Hair. Thus, the $30 may have changed hands for an another, unexplained purpose.

¶34 To convict Vandersloot of the offense of criminal sale of dangerous drugs, pursuant to § 45-9-101(3), MCA, the State needed to demonstrate beyond a reasonable doubt that

12

Dexedrine is a dangerous drug and that Big Hair obtained the Dexedrine from Vandersloot, with or without the exchange of money. Pharmacist Raymond testified that Dexedrine is the commercial name for dextroamphetamine, which is an amphetamine that is formulated to last longer in the body. Amphetamine is a central nervous system stimulant and is listed as a Schedule II drug under § 50-32-224(3), MCA. Viewing the circumstantial evidence in the light most favorable to the prosecution, we conclude that a jury could reasonably find that the black and orange capsules that Big Hair admitted snorting in the Big Horn County Jail dayroom on August 15, 1999, were Dexedrine and reasonably determine that Big Hair could only have obtained the capsules from Vandersloot. Therefore, we conclude that sufficient evidence supported the jury's verdict.

## CONCLUSION

¶35 We affirm the District Court's denial of Vandersloot's motion *in limine* to exclude the testimony of Trent Burke; we affirm the admission of Vandersloot's medication sign-out sheet in the absence of a defense objection; and we hold that sufficient evidence supported the jury's verdict.

¶36 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JIM REGNIER
/S/ JIM RICE

13