FILED

October 20 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0129

DA 15-0129

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 300

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

CHARLES RORY HALA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC 2014-40
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Torger S. Oaas, Attorney at Law; Lewistown, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General; Helena, Montana

          Thomas P. Meissner, Fergus County Attorney; Lewistown, Montana

Submitted on Briefs:  September 23, 2015
Decided:  October 20, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

Following a bench trial, Charles Rory Hala (Hala) was convicted of operating a motor vehicle with an alcohol concentration in excess of 0.08 in violation of § 61-8-406(1)(a), MCA, the DUI "per se" statute, in Justice Court. Hala appealed to the Tenth Judicial District Court, Fergus County, and filed a motion to suppress the results of two separate blood alcohol concentration (BAC) tests. Following the District Court's denial of his motion, Hala entered a guilty plea and reserved the right to appeal the denial of his motion.

¶1 Hala raises two issues on appeal that we state as follows:

*1. Was a blood test, drawn over 8 hours after the act of driving, taken within a reasonable time under the circumstances?*

*2. Did the District Court err by holding that certain evidence was admissible under the "inevitable discovery rule" when the State made that argument for the first time at the hearing on Hala's motion to suppress?*

¶2 Because we affirm the judgment based upon resolution of the first issue, we decline to reach the second issue.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 Hala was driving along Highway 191, between Lewistown and Roy, Montana, on November 16, 2013, when his Chevy pickup truck drifted off the road and crashed at approximately 12:30 a.m. Hala was injured and unable to call for assistance; the single-car accident went unreported until about 5:00 a.m. when passing hunters saw Hala's truck and called authorities. Montana Highway Patrol Trooper Joseph DeJong

2

was dispatched to the scene and arrived shortly after 6:30 a.m. At roughly this same time, emergency personnel had also arrived, and they transported Hala to the nearby Central Montana Medical Center (CMMC) via ambulance. Trooper DeJong did not see or speak to Hala at the scene of the accident. When Hala arrived at CMMC at about 6:45 a.m., his blood was drawn for medical purposes. This test (6:45 a.m. test), a blood plasma test, indicated a BAC of 0.17.[1]

¶4     After determining that "the tracks from the crash were consistent with someone falling asleep or passing out," Trooper DeJong arrived at CMMC at approximately 8:10 a.m. to interview Hala. When questioned, Hala admitted to DeJong that he had been drinking in Lewistown before starting to drive home, and also admitted to taking Oxycodone and OxyContin for neck pain. DeJong could smell the odor of alcohol around Hala, and additionally noted that his eyes appeared bloodshot and glassy. DeJong performed a horizontal gaze nystagmus test on Hala, whose score indicated that he was under the influence. At this point, DeJong requested a blood sample from Hala, who verbally agreed after DeJong read the implied consent advisory. A CMMC registered nurse drew a second blood sample from Hala at approximately 8:30 a.m. This test (8:30 a.m. test) was a whole blood test. This test was later sent to the Montana Crime Lab and indicated a BAC of 0.122.

---

[1] As explained at the evidentiary hearing, plasma blood tests are performed on the liquid portion of a drawn blood sample, after the solid cellular components have been removed. This is in contrast to tests performed on whole blood, or blood that has not been broken down into solid and liquid components. The distinction becomes important when considering the reported BAC results; typically a plasma test will produce a result approximately 10-15% higher than a whole blood test drawn at the same time. The expert witness from the Montana Crime Lab testified that Hala's 0.17 plasma BAC would equate to approximately 0.14 whole blood BAC.

3

¶5     DeJong asked if Hala would also release the results of the 6:45 a.m. test to him. Hala agreed, and a nurse wrote "verbal consent given" on the hospital's authorization form. Two people witnessed Hala's authorization but Hala did not sign the form himself. Hala was then "life-flighted" to a Billings hospital due to his neck injuries, and afterwards, DeJong received the results of the 6:45 a.m. test from CMMC.

¶6     Hala was charged with DUI "per se" under § 61-8-406(1)(a), MCA, and was found guilty following a bench trial in Justice Court in Fergus County, which is not a court of record. He appealed to the Tenth Judicial District Court for a trial de novo. Before trial, Hala filed a motion to suppress the results of both the 6:45 a.m. and the 8:30 a.m. BAC tests, arguing that the 8:30 a.m. test should be suppressed because it was not taken within a "reasonable time," in violation of § 61-8-401(4), MCA. Hala argued the 6:45 a.m. test should be suppressed because the release of this test result to DeJong violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA). After holding an evidentiary hearing, the District Court denied Hala's motion to suppress, holding the 8:30 a.m. test was taken within a reasonable time. The District Court also held there was insufficient evidence to determine whether the release of the 6:45 a.m. test violated HIPAA, but concluded that "any defect in the authorization would constitute harmless error" under the inevitable discovery doctrine. Hala then entered a guilty plea, reserving his right to appeal the denial of his motion to suppress. He now appeals.

4

## STANDARD OF REVIEW

¶7 "We review the denial of a motion to suppress[2] to determine whether the trial court's findings of fact are clearly erroneous and whether it correctly applied those findings as a matter of law." *City of Missoula v. Iosefo*, 2014 MT 209, ¶ 8, 376 Mont. 161, 330 P.3d 1180 (citation omitted) (reviewing a district court's ruling on a motion to suppress in an aggravated DUI case).

## DISCUSSION

¶8 *1. Was a blood test, drawn over 8 hours after the act of driving, taken within a reasonable time under the circumstances?*

¶9 Hala argues that the 8:30 a.m. BAC test, taken more than eight hours after the estimated time of the driving and crashing of his pickup, "is just not reasonable." We disagree and affirm the District Court's denial of his motion to suppress.

¶10 Section 61-8-406(1)(a), MCA, the DUI "per se" statute, prohibits a person from driving or being in control of a noncommercial motor vehicle on a public roadway while having an alcohol concentration of 0.08 or higher. Section 61-8-401(4), MCA, the DUI statute, provides that the concentration of alcohol from a test "taken within a reasonable time after the alleged act" gives rise to certain evidentiary inferences at trial. As we have noted, "[t]he DUI statute therefore explicitly allows for law enforcement to determine a person's alcohol concentration a reasonable time after the alleged act, while the DUI Per Se statute refers only to a person's alcohol concentration *while they are*

---

[2] The State argues that this case is more properly described as a "denial of a motion in limine based on an objection to evidence as irrelevant," and not the denial of a motion to suppress. However, the parties briefed and argued the issue as a motion to suppress, the District Court ruled on it as a motion to suppress, and we will continue in the same vein.

5

*driving."  State v. McGowan*, 2006 MT 163, ¶ 10, 332 Mont. 490, 139 P.3d 841 (emphasis added).  Nonetheless, in *McGowan*, we interpreted the DUI "per se" statute "to allow for the admissibility of . . . tests administered within a reasonable amount of time after the alleged act of driving while under the influence . . . ."  *McGowan*, ¶ 17.  This holding made it unnecessary to "prove evidence of a person's alcohol concentration at the time that they were driving through retrograde extrapolation evidence."  *McGowan*, ¶ 18.  "Retrograde extrapolation represents the technique through which experts estimate alcohol concentration at some earlier time based on the test results at some later time."  *McGowan*, ¶ 18.  Therefore, we apply the requirement of taking an alcohol concentration test "within a reasonable time," § 61-8-401(4), MCA, to DUI "per se" prosecutions.  *McGowan*, ¶ 17.

¶11    In *State v. Hamilton*, 2002 MT 263, 312 Mont. 249, 59 P.3d 387, this Court considered a similar DUI case and addressed the issue of taking alcohol concentration tests "within a reasonable time."  Hamilton similarly was involved in a single-car crash in the early hours of the morning; the county sheriff arrived at the scene at approximately 1:30 a.m., and observed the smell of alcohol on the defendant.  *Hamilton*, ¶¶ 5-6.  After emergency crews removed Hamilton from the car with "Jaws of Life" equipment, he was taken to the hospital for treatment, arriving around 3:10 a.m., where he was met by a Montana Highway Patrol trooper who noted that Hamilton smelled of alcohol and had bloodshot and glassy eyes.  *Hamilton*, ¶ 7.  The hospital drew a blood sample at 3:54 a.m., over three hours after the accident had been initially reported.  The blood draw indicated a BAC result of 0.26.  *Hamilton*, ¶ 7.

6

¶12     Hamilton argued the three hours that had elapsed between the time he was in physical control of his truck and the time his blood was drawn violated the requirement that a blood sample be taken within a reasonable time of the alleged act. *Hamilton*, ¶ 12. We held that "the statute requires a court to look at the totality of the circumstances to determine whether a blood test was taken within a reasonable time of the alleged act," *Hamilton*, ¶ 17, and upheld the test, reasoning that "the test was not unreasonably delayed by the investigating officers, under the circumstances in this case." *Hamilton*, ¶ 21.

¶13     Hala was involved in a single-car accident and sustained serious enough injuries that he was unable to call for emergency assistance, and later was "life-flighted" to another medical facility. Because the accident occurred during night hours and Hala was unable to obtain assistance, the accident went undiscovered for four to five hours, until hunters fortuitously passed by and reported the accident. Emergency personnel arrived on the scene and transported Hala to CMMC, arriving approximately six hours after the accident. Trooper DeJong arrived at the scene as Hala was being taken to CMMC, and began his investigation without seeing or speaking to Hala. After an initial investigation, DeJong proceeded to CMMC and interviewed Hala, noting that his eyes were bloodshot and glassy and that he smelled of alcohol. DeJong requested a blood draw within twenty minutes of arriving at the hospital.

¶14     We conclude that the test requested by DeJong was taken within a reasonable time. As in *Hamilton*, the officer did not unreasonably delay initiation of the test, given

7

the circumstances of the accident. *Hamilton*, ¶ 21. The District Court did not err by denying Hala's motion to suppress on this ground.[3]

¶15 *2. Did the District Court err by holding that certain evidence was admissible under the "inevitable discovery rule" when the State made that argument for the first time at the hearing on Hala's motion to suppress?*

¶16 Hala next contends that the District Court erred when it considered the "inevitable discovery rule" argument raised by the State for the first time at the evidentiary hearing, and by ignoring his claim that the release of the 6:45 a.m. test results violated HIPAA. However, because we affirm the District Court's ruling on the first issue, and thereby affirm the use of the 8:30 a.m. test result, we decline to reach this issue.

¶17 Affirmed.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON

---

[3] Hala also briefly argues that "the District Court erred by refusing to limit the purpose for the admission of the BAC result even though this was specifically requested" (internal citations omitted). At the evidentiary hearing, Hala argued that, under *Hamilton*, the state's expert witness would be limited to testifying that the BAC results inferred that Hala had ingested a great deal of alcohol in order to have had the resulting high BAC level at the time the test was taken. At the hearing, the expert, just as in *Hamilton*, did not attempt to extrapolate backwards to calculate Hala's precise BAC at the time of the crash, but instead stated that Hala would have had a higher BAC at the time of the crash than at the time of testing. In any event, Hala pled guilty and did not proceed to trial, so the District Court was not called upon to make a trial ruling on the issue.