FILED

06/25/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0356

DA 23-0356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 134

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DONALD AARON HESSER,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC-21-546
Honorable Elizabeth A. Best, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Nathan J. Hoines, James Olsen, Hoines Law Office, P.C., Great Falls, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

          Joshua A. Racki, Cascade County Attorney, Stephanie Fuller, Deputy County Attorney, Great Falls, Montana

Submitted on Briefs: May 1, 2024
Decided: June 25, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     Donald Aaron Hesser, Jr. (Hesser) pled guilty in the Eighth Judicial District Court, Cascade County, to felony driving under the influence (DUI).  As part of his plea agreement, Hesser reserved his right to appeal the denial of his motion to suppress.  The execution of his sentence was stayed pending the outcome of this appeal.

¶2     We restate the issues on appeal as follows:

> 1. *Was there probable cause to issue an investigative subpoena to obtain Hesser's blood sample?*
>
> 2. *Was law enforcement authorized under § 61-8-402, MCA,[1] to request a blood sample prior to obtaining an investigative subpoena?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3     On May 4, 2021, Montana State Trooper Daniel Arnold (Arnold) was dispatched to a scene involving a motorcycle accident in Cascade County.  The driver of the motorcycle—later identified as Hesser—was found by first responders laying in a ditch in critical condition and was taken by helicopter to Benefis Health Systems for treatment. The weather was sunny, and the road was paved, dry, and in good condition.  Investigation at the scene indicated Hesser was approaching a gradual lefthand curve when he drifted to the right and went off the road.  There was no evidence indicating that Hesser had attempted to brake or correct his steering.  Thus, law enforcement could not determine why Hesser had an accident.

---

[1] Section 61-8-402, MCA (2019), has since been recodified as § 61-8-1016, MCA.

¶4    At the time of the accident, it was thought that Hesser might not survive. However, upon arriving at the hospital, Trooper Arnold learned Hesser was expected to survive, though he remained unconscious, intubated, and severely injured. Trooper Arnold had previously determined Hesser's identity and learned he had four DUI convictions.[2] After discovering medical staff had taken a blood sample from Hesser, Trooper Arnold requested they not discard it. On May 6, 2021, the State prepared an investigative subpoena for Hesser's medical records and blood sample. Trooper Arnold presented the subpoena to the hospital, obtained the blood sample, and then sent the sample to the Montana State Crime Lab for testing. The test results showed Hesser's blood alcohol content was .208.

¶5    In his motion to suppress, Hesser argued that Trooper Arnold lacked authority to apply for an investigative subpoena because, pursuant to § 46-4-301(3), MCA, only a prosecutor may obtain an investigative subpoena. Additionally, Hesser argued there was not sufficient probable cause set forth in the affidavit filed in support of the investigative subpoena. The State agreed that § 46-4-301(3), MCA, provided only a prosecutor could apply for an investigative subpoena but indicated that Deputy County Attorney Angela Payne had, in fact, applied for the subpoena. The State maintained that even if there was insufficient probable cause to grant the investigative subpoena, Trooper Arnold was still authorized to direct a blood draw pursuant to § 61-8-402, MCA, because Hesser was involved in an accident involving serious bodily injury and was incapable of withdrawing his consent.

---

[2] The District Court's order references four prior DUI convictions. However, the affidavit in support of the investigative subpoena provided that Hesser had three prior DUI convictions.

3

¶6    In its order denying Hesser's motion to suppress, the District Court noted that although Hesser argued Trooper Arnold had obtained the investigative subpoena, "the face of the document reflects that it was signed by Deputy County Attorney Payne." Therefore, it determined that while Trooper Arnold delivered the subpoena, a prosecutor was the one that sought it. The District Court also determined the investigative subpoena was supported by probable cause finding that Hesser was involved in a serious accident, the road and weather conditions showed no reason why the accident would have occurred, and Hesser had four prior DUI convictions.

¶7    Hesser appeals.[3]

## STANDARD OF REVIEW

¶8    This Court "review[s] a district court's denial of a motion to suppress evidence for whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law." *State v. Vegas*, 2020 MT 121, ¶ 8, 400 Mont. 75, 463 P.3d 455 (citing *State v. Ruggirello*, 2008 MT 8, ¶ 15, 341 Mont. 88, 176 P.3d 252). "A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *Vegas*, ¶ 8 (quoting *Ruggirello*, ¶ 15).

## DISCUSSION

¶9    *1. Was there probable cause to issue an investigative subpoena to obtain Hesser's blood sample?*

---

[3] On appeal, Hesser no longer contends the subpoena was improperly issued because Trooper Arnold delivered it.

¶10    Hesser argues the affidavit filed in support of the investigative subpoena lacked sufficient probable cause to suspect Hesser of DUI because there was no mention of a smell of alcohol, Hesser had not admitted to consuming alcohol, there were no open containers found at the scene, and hospital staff had not reported signs that Hesser had consumed alcohol.  Hesser maintains that besides the crash and his prior DUIs there was nothing to suggest Hesser was involved in a DUI.

¶11    Section 46-4-301(3), MCA, provides:

> In the case of constitutionally protected material, such as but not limited to medical records or information, a subpoena may be issued only when it appears upon the affidavit of the prosecutor that a compelling state interest requires it to be issued.  In order to establish a compelling state interest for the issuance of such a subpoena, the prosecutor shall state facts and circumstances sufficient to support probable cause to believe that:
>
> (a) an offense has been committed; and
>
> (b) the information relative to the commission of that offense is in the possession of the person or institution to whom the subpoena is directed.

"Probable cause exists 'where the facts and circumstances within an officer's personal knowledge prove sufficient to warrant a reasonable person to believe that someone is committing or has committed an offense.'"  *State v. Kelm*, 2013 MT 115, ¶ 25, 370 Mont. 61, 300 P.3d 687 (quoting *State v. Ellington*, 2006 MT 219, ¶ 16, 333 Mont. 411, 143 P.3d 119).  In *State v. Nelson*, we explained that "[w]hen an investigative subpoena seeks discovery of protected medical records or information, the subpoena can be likened to a search warrant which must satisfy the strictures of the Fourth Amendment and Article II, Section 11 of the Montana Constitution.  A search warrant can only issue upon a showing

of 'probable cause.'" 283 Mont. 231, 243, 941 P.2d 441, 449 (1997). This Court "pay[s] great deference to a magistrate's determination that probable cause exists to issue a search warrant, and we 'draw all reasonable inferences possible to support the issuing magistrate's determination of probable cause.'" *State v. Giacomini*, 2014 MT 93, ¶ 11, 374 Mont. 412, 327 P.3d 1054.

¶12 In the affidavit filed in support of the investigative subpoena, Deputy Attorney Payne set forth several factors supporting the issuance of the subpoena:

> On May 4, 2021, Donald Hesser was eastbound on Armington Road on a motorcycle. There was no inclement weather, the roads were dry, and the weather was sunny. Hesser was driving [] around a left-hand curve and drifted off the right road edge, where his motorcycle bottomed out and became airborne. Hesser never corrected. . . . Hesser does have three prior DUI convictions and is believed to have been intoxicated when this wreck occurred.

The affidavit thus noted several factors that supported probable cause to believe Hesser had committed the offense of DUI. First, at the time of the accident, it was daylight, sunny, the roads were dry, and there was no inclement weather. Second, the affidavit noted there was no evidence of any corrective action taken by Hesser. Finally, the affidavit noted that Hesser had prior DUI convictions. Thus, the affidavit established that Hesser was in a single-vehicle accident and nearly died; the accident was unexplainable because Hesser had drifted off the road for no reason; Hesser took no corrective action at all; and Hesser had a history of driving under the influence.

¶13 Hesser claims that if we were to find this was enough to justify probable cause "any person with a prior DUI conviction who was in a crash and transported to the hospital

6

would be subject to a violation of their constitutional rights." We recently addressed a similar contention regarding the role an offender's criminal history has in justifying law enforcement's action under the Fourth Amendment. In *State v. Panasuk*, 2024 MT 113, __ P.3d __, we held, in the context of reasonable suspicion to expand a stop, that "knowledge of a person's prior criminal involvement is alone insufficient to give rise to the requisite reasonable suspicion" to support expansion of a stop. *Panasuk*, ¶ 22. However, we explained that "[w]hile knowledge of prior criminal history alone is insufficient to constitute particularized suspicion, knowledge of prior criminal activity in conjunction with other factors that *do* foster a reasonable suspicion of *current* criminal activity can be sufficient." *Panasuk*, ¶ 22 (emphasis in original). This Court has repeatedly held that "criminal history is 'one of the many factors to be considered under the totality of [the] circumstances test.'" *State v. Johnston*, 271 Mont. 385, 390, 897 P.2d 1073, 1076-77 (1995) (quoting *State v. Hook*, 255 Mont. 2, 6, 839 P.2d 1274, 1277 (1992)). Here, there were factors *in conjunction* with Hesser's prior DUI convictions which established probable cause to believe that Hesser had committed the offense of DUI; namely, an unexplainable serious single-vehicle motorcycle crash during the daytime when Hesser drifted off a dry and well-paved road after failing to negotiate a slight left turn and taking no corrective action at all.

¶14 In its order denying Hesser's motion, the District Court noted that Hesser was found "unconscious at the scene of a serious wreck[,] [t]he road and weather conditions did not show any reason why the wreck should have occurred[,]" and Hesser had prior DUI

7

convictions. Based on these factors, the District Court was "satisfied that the affidavit recited evidence which [wa]s more than adequate to establish probable cause to believe Hesser committed DUI." We agree.

¶15 Hesser cites *State v. Hala*, 2015 MT 300, 381 Mont. 278, 358 P.3d 917, *Nelson*, 283 Mont. 231, 941 P.2d 441, and *State v. Decker*, 251 Mont. 339, 828 P.2d 1342 (1991), to support his argument that there must be clearer indications that alcohol was involved before probable cause can be found to exist. In *Hala*, however, the issue on appeal was whether a blood test drawn eight hours after the accident was obtained within a reasonable time under the circumstances. *Hala*, ¶ 2. We did not address the sufficiency of probable cause. Similarly, in *Decker*, we did not address the sufficiency of probable cause because the sole issue on appeal was whether the district court erred when it allowed testimony of a forensic scientist regarding Decker's blood alcohol content.

¶16 In *Nelson*, Nelson appealed an order denying his motion to suppress the results of his blood alcohol test obtained by means of an investigative subpoena. 283 Mont. at 233, 941 P.2d at 443. Nelson was involved in an accident after he drifted off the road while traveling on Interstate 94 and struck a guardrail. *Nelson*, 283 Mont. at 233-34, 941 P.2d at 443. Nelson was later driven by a friend to an emergency room where he was treated for a broken jaw. *Nelson*, 283 Mont. at 234, 941 P.2d at 443. Concerned over his apparent lack of pain, the treating physician ordered a blood alcohol test. *Nelson*, 283 Mont. at 234, 941 P.2d at 443. Nelson reported the accident to the Montana Highway Patrol the following morning and during the subsequent investigation revealed that he had "consumed

a couple of drinks at a local bar . . ." prior to the accident. 283 Mont. at 234, 941 P.2d at 443. During an investigative interview by police, Nelson's treating physician indicated that alcohol could explain Nelson's lack of pain but did not provide what his blood alcohol content was. *Nelson*, 283 Mont. at 234, 941 P.2d at 444. We affirmed the district court's decision to deny the motion to suppress the investigative subpoena issued to Nelson's treating physician, reasoning that:

> Even if we disregard [the treating physician's] thinly veiled comment to Sgt. Mahlum as to the reason for Nelson's lack of pain, the balance of the information known to law enforcement was sufficient to establish probable cause. That is, that Nelson had consumed a couple of drinks before the accident; that the road was bare and dry; that he ran into a guardrail; that he suffered a broken jaw; and that he had received medical treatment at the Glendive Medical Center.

*Nelson*, 283 Mont. at 244, 941 P.2d at 449-50. While in *Nelson* law enforcement obtained an admission of alcohol use prior to the accident, Trooper Arnold could not obtain any admissions because of Hesser's serious medical condition that rendered him unconscious. Moreover, here, while there was no direct evidence of alcohol consumption by way of an offender's admissions, there was evidence of numerous DUI convictions. Thus, under the totality of the circumstances, which is our guidepost, there was more than adequate evidence to support probable cause to believe Hesser had committed the offense of DUI.

¶17 We conclude the District Court was correct when it found there was sufficient probable cause that Hesser had committed the offense of DUI.

¶18 *2. Was law enforcement authorized under § 61-8-402, MCA, to request a blood sample prior to obtaining an investigative subpoena?*

9

¶19 As an independent basis for Trooper Arnold securing a blood sample, we consider § 61-8-402, MCA. Section 61-8-402(1), MCA (2019), addresses blood tests for alcohol within the context of the implied consent laws. Section 61-8-402(1), MCA (2019), provides:

> (1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent to a test or tests of the person's blood or breath for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body.

Additionally, "[t]he test or tests must be administered at the direction of a peace officer when: (iii) the officer has probable cause to believe that the person was driving or in actual physical control of a vehicle . . . involved in a motor vehicle accident or collision resulting in serious bodily injury. . . ." Section 61-8-402(2)(a)(iii), MCA (2019). Hesser was unconscious at the hospital and thus statutorily determined not to have withdrawn his consent to provide a blood sample pursuant to § 61-8-402(3), MCA (2019), which provides, "[a] person who is unconscious or who is otherwise in a condition rendering the person incapable of refusal is considered not to have withdrawn the consent provided by subsection (1)."

¶20 Here, Hesser was operating a motor vehicle upon a road of the state. He therefore impliedly consented to the administration of a blood test. Because Hesser was unconscious, intubated, and had not regained consciousness prior to Trooper Arnold's arrival, he was considered statutorily not to have withdrawn his consent. We conclude Trooper Arnold could have lawfully directed medical staff to obtain a blood sample

10

pursuant to § 61-8-402, MCA (2019), when he arrived at the hospital and Hesser was unconscious. Because Hesser was in the midst of receiving emergency medical treatment and his survival was uncertain, Trooper Arnold asked medical staff that Hesser's blood sample not be discarded. Trooper Arnold's actions were both reasonable and lawful. We would not want the rendering of emergency medical care interrupted by an additional blood draw when it was unnecessary for law enforcement's investigation. The above statutory scheme establishes an effective method for obtaining a person's blood sample under these circumstances.

## CONCLUSION

¶21 We conclude that the District Court did not err when it denied Hesser's motion to suppress and found there was sufficient probable cause for issuance of the investigative subpoena. Additionally, Trooper Arnold was authorized to request a blood draw pursuant to § 61-8-402(2)(a), MCA (2019), and Hesser, because he was unconscious, was considered statutorily not to have withdrawn his consent pursuant to § 61-8-402(3), MCA (2019).

¶22 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ JIM RICE
/S/ JAMES JEREMIAH SHEA

11