

DA 07-0310

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 173

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSEPH EVERETTE HOWARD,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2005-585
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jim Wheelis, Chief Appellate Defender, Lisa S. Korchinski, Assistant
          Appellate Defender, Helena, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Jesse A. Laslovich,
          Assistant Attorney General, Helena, Montana

          Fred Van Valkenburg, Missoula County Attorney, Dale Mrkich, Deputy
          County Attorney, Missoula, Montana

Submitted on Briefs:  March 5, 2008

Decided:  May 13, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     In December 2005 Joseph Everette Howard (Howard) was charged with felony operating a vehicle with a blood alcohol level of .08 or greater (DUI), misdemeanor operating a vehicle without proof of liability insurance, and misdemeanor failure to obey a traffic signal.  He pleaded not guilty and counsel was appointed to represent him.  In March 2006 Howard filed a Motion to Dismiss/Suppress.  The court held a hearing on the Motion in June 2006, and in August 2006, the court denied Howard's Motion.  In December 2006 Howard moved to have his case dismissed for lack of a speedy trial.  At the conclusion of a hearing on this motion, the District Court denied it.  Howard subsequently entered guilty pleas to Counts I and III and Count II was dismissed.  He reserved his right to appeal both denied motions and filed a timely appeal.  We affirm the District Court's denial of Howard's motion to dismiss relative to DeWitt's authority.  We remand the matter to the District Court for further analysis of Howard's claim that he was deprived of a speedy trial.

## ISSUES

¶2     A restatement of the issues on appeal is:

¶3     Did the District Court err in denying Howard's motion to dismiss on the ground that Officer DeWitt lacked authority to execute the stop?

¶4     Did the District Court err in denying Howard's motion to dismiss for lack of a speedy trial?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On Saturday, November 12, 2005, at approximately 2:30 a.m., University of Montana (UM) Security Officer DeWitt noticed a vehicle stop at a red traffic light at the intersection of Arthur Avenue and South 6th Street East in Missoula. The car then proceeded through the light while the light was still red. DeWitt pursued the vehicle and activated his emergency overhead lights. The car did not stop immediately but rather continued northbound across the Madison Street Bridge and finally stopped near the intersection of Madison and Front Street. DeWitt approached the stopped car and determined that it was driven by Howard. While speaking with him, DeWitt noticed that Howard smelled of alcohol. The officer executed a records search and learned that Howard was on probation for felony DUI and criminal possession of dangerous drugs. Howard acknowledged that he was on probation and admitted that he had consumed approximately six beers. DeWitt conducted a preliminary breath test (PBT) analysis which revealed Howard's blood alcohol concentration was .291. DeWitt arrested Howard and transported him to the Missoula County Detention Center. At the Detention Center, Howard consented to perform field sobriety tests and according to DeWitt failed these tests. Howard refused further breath analysis.

¶6 The State filed an Affidavit and Information on December 7, 2005, and at his December 20, 2005 arraignment, Howard pleaded not guilty. The court set a scheduling conference for March 14, 2006. At the conference on March 14, Howard filed a Motion to Dismiss/Suppress, claiming DeWitt did not have the authority as a campus security officer to stop him at an off-campus location. The State was ordered to respond by March 28 but subsequently was granted additional time. While its response was due on

3

April 17, it did not file it until May 9, 2006. Also on May 9 the court held a status conference. Howard was given one week to reply to the State's response to his motion to dismiss. He also requested a hearing on the motion. The District Court held a hearing on Howard's motion on June 13, 2006, at the conclusion of which the parties requested time to submit supplemental briefs. Howard filed his brief on July 5 and the State filed its on July 31, 2006. On August 28, 2006, the District Court denied Howard's motion.

¶7 Upon request by the parties, the court held a status hearing on September 19, 2006, and set a trial date of December 20, 2006. On December 12, Howard filed a Motion to Dismiss for Lack of a Speedy Trial. A hearing was held on this Motion on December 18 at the conclusion of which the District Court denied the Motion. On December 19 Howard entered into a plea agreement wherein he reserved his right to appeal the two denied motions. The District Court entered its written judgment on February 21, 2007, and Howard timely appealed.

## STANDARDS OF REVIEW

¶8 The grant or denial of a motion to dismiss in a criminal case is a question of law which we review de novo on appeal. Our standard of review is plenary, and we determine whether a district court's conclusion is correct. *State v. Ashmore*, 2008 MT 14, ¶ 7, 341 Mont. 131, ¶ 7, 176 P.3d 1022, ¶ 7 (citation omitted).

¶9 We review a district court's ruling on a criminal defendant's motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence,

4

the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *State v. Ruggirello*, 2008 MT 8, ¶ 15, 341 Mont. 88, ¶ 15, 176 P.3d 252, ¶ 15 (citation omitted).

¶10 We review the factual findings underlying a district court's speedy trial ruling to determine whether those findings are clearly erroneous. *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, ¶ 119, 167 P.3d 815, ¶ 119 (citation omitted). The court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Ariegwe*, ¶ 119 (citation omitted). However, whether the defendant has been denied a speedy trial—i.e., whether the factual circumstances, when evaluated pursuant to the four-factor balancing test, amount to a speedy trial violation—is a question of constitutional law. *Ariegwe*, ¶ 119 (citations omitted). We review a trial court's conclusions of law de novo to determine whether the court's interpretation and application of the law are correct. *Ariegwe*, ¶ 119 (citation omitted).

**DISCUSSION**

¶11 *Did the District Court err in denying Howard's motion to dismiss on the ground that Officer DeWitt lacked authority to execute the stop?*

¶12 Howard argues that the District Court erred in denying his motion to dismiss or suppress. He asserts the District Court erroneously based its denial on the Uniform Act on Close Pursuit (the "Act"). Howard maintains the Act was not intended to authorize traffic stops such as the one in this case but rather was developed to allow peace officers

5

of one state engaged in close pursuit with the intent to arrest, to cross state lines in continued pursuit. Howard also asserts that the statutes and the memoranda of understanding relied upon by the State do not extend DeWitt's authority, as a University security officer, to the place where Howard stopped his vehicle, and that DeWitt did not have the authority to conduct an investigation or field sobriety tests or to arrest him.

¶13 The State concurs that the Act is inapplicable in this case but argues that the District Court nonetheless reached the right decision in denying Howard's motion to dismiss based on the authority vested in DeWitt under the memoranda of understanding among the University of Montana, the Missoula Police Department and the Missoula County Sheriff's Department.

¶14 Section 20-25-321(1)(a) and (b), MCA, give UM security officers the following jurisdiction: (1) within campus boundaries, (2) over an area within one mile of the exterior boundaries of the campus "for campus-related activities," and (3) over other properties owned, operated, controlled, or administered by the university. Additionally, § 20-25-321(3), MCA, provides that any university system security department may enter into an agreement with law enforcement agencies that specifies the geographic and subject matter jurisdiction of the campus security officers in areas outside the areas described in subsections (1)(a) and (b) above.

¶15 Additionally, § 20-25-322, MCA, allows universities to enter into an agreement with the city or county, under which the campus security officer is authorized to issue citations for moving traffic violations which occur within the boundaries of the campus or on streets or alleys contiguous to the campus.

¶16 In accordance with these statutes, in July 1993 UM entered into such an agreement with the City and County of Missoula and their respective police departments. Under this agreement campus security officers had the authority to issue citations for moving traffic violations that occurred "within the boundaries of the campus or on streets or alleys contiguous thereto." In July 2005 UM entered into a second agreement with the Missoula Police Department and the Missoula County Sheriff's Department. The relevant portion of the 2005 agreement provides:

> The [campus security officers'] primary focus is the University of Montana campus properties, as they are defined in this agreement, and campus related activities within one mile of the exterior boundaries of each campus. Under this agreement and under Montana law, the [Missoula Police Department] extends the jurisdiction of the [campus security officers]. The [campus security officers'] jurisdiction is extended to the City limits of Missoula for the enforcement of all traffic and criminal offenses that occur in the [campus security officer's] presence and poses an imminent threat to public safety.

¶17 It is undisputed that Howard's failure to obey the traffic signal at the intersection of Sixth and Arthur constituted a "traffic offense" as provided in the two agreements. Additionally, it is undisputed that this intersection is located on streets that are contiguous to the campus; therefore the offense "occurred" within DeWitt's jurisdiction. Lastly, it is undisputed that the traffic offense occurred in the presence of DeWitt.

¶18 Howard argues that because the offense occurred at 2:30 a.m. when there was little traffic on the road, it did not pose an "imminent threat to public safety." The State counters that, in accordance with the agreements, the offense occurred within DeWitt's jurisdiction and Howard's failure to respond to the patrol car's flashing emergency lights until approximately one mile off-campus does not defeat the officer's jurisdiction. The

7

State also argues that Howard's failure to obey traffic signals, regardless of the amount of traffic, presented an imminent threat to public safety. In this connection, DeWitt testified that, based on his experience, observing a vehicle run a red light at two-thirty in the morning is an indicator of a possible DUI which always presents an imminent threat to public safety.

¶19 We agree with the State. At the time of the offense, Howard was on roads contiguous to the university campus, meaning he committed this offense within the narrowest geographic parameters of DeWitt's jurisdiction. Additionally, Howard's traffic violation presented an imminent threat to public safety. While there may not have been heavy vehicle traffic at two-thirty on that particular morning as DeWitt testified, various employees typically get off work at that time. Additionally, it is reasonable that students or other pedestrians could have been walking in the area at two-thirty on a Saturday morning. We are also persuaded by DeWitt's explanation that after observing Howard run the red light, he pursued Howard both for the traffic violation and his concern that Howard may have been drinking. From a public policy perspective, to conclude that DeWitt lost jurisdiction because Howard failed to stop until he was beyond the campus parameters would encourage violators to simply drive beyond a defined jurisdictional boundary to escape potential penalty for a violation.

¶20 While relying on an inapplicable statute, the District Court nonetheless correctly concluded that DeWitt had the authority to stop, investigate and arrest Howard. As we have held before, we will affirm a district court's decision when it reaches the correct result for the wrong reasons. *Mary J. Baker Revoc. Trust v. Cenex Harvest*, 2007 MT

8

159, ¶ 80, 338 Mont. 41, ¶ 80, 164 P.3d 851, ¶ 80 (citation omitted). The court's denial of Howard's motion to dismiss for want of jurisdiction was not error.

¶21 *Did the District Court err in denying Howard's motion to dismiss for lack of a speedy trial?*

¶22 Howard argues that the District Court erred when it denied his motion to dismiss on the ground that the State failed to provide him with a speedy trial. We note that when Howard argued for dismissal before the District Court he primarily relied upon the speedy trial analyses set forth in *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, *overruled in part by Ariegwe*, and *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182 (1972). He maintained that he satisfied the four-prong test established in those cases in that he was in jail for a total of 403 days before his trial; the State was responsible for 354 days of delay; he timely asserted his right to a speedy trial; and he was prejudiced by his delayed trial. He submits that the District Court should have dismissed his case.

¶23 The State countered before the District Court that under the test established in *Barker,* Howard was responsible for more delay days than he claimed and he was not unduly prejudiced by the delay. As a result, the balancing test actually weighed in favor of the State.

¶24 The District Court did not issue a written order denying Howard's motion to dismiss for lack of a speedy trial; rather, it ruled from the bench at the conclusion of a hearing on the motion which was conducted on December 18, 2006. Without specifying the number of delay days attributable to each party, the court ruled that both parties bore

responsibility for delays in moving the matter forward. The court also concluded that Howard was not "overwhelmingly" prejudiced by the delay in that Howard presented no evidence that his defense was impaired or that he suffered loss of witnesses.

¶25 Subsequently, in August 2007 we rendered our decision in *Ariegwe* in which we established a new framework for analyzing speedy trial claims and overruled in part our decision in *Bruce*. Since that time, we have remanded speedy trial questions to the district courts when the trial court did not have an opportunity to apply the *Ariegwe* analysis to the claim before it. *State v. Smith*, 2008 MT 7, 341 Mont. 82, 176 P.3d 258; *State v. Madplume*, 2008 MT 37, 341 Mont. 321, 176 P.3d 1071. We conclude this remains the appropriate method to resolve such cases; therefore we remand this matter to the District Court for analysis of Howard's speedy trial claim under *Ariegwe*.

## CONCLUSION

¶26 For the foregoing reasons, we affirm the District Court's denial of Howard's Motion to Dismiss/Suppress relative to DeWitt's authority. We dismiss without prejudice and remand to the District Court for a speedy trial analysis under *Ariegwe*.


/S/ PATRICIA COTTER


We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON