DA 07-0548

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 260

STATE OF MONTANA,

   Plaintiff and Appellee,

 v.

MATTHEW HILL,

   Defendant and Appellant.

APPEAL FROM:  District Court of the Sixth Judicial District,
        In and For the County of Park, Cause No. DC 2006-094
        Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Jami Rebsom, Karl Knuchel, P.C., Livingston, Montana

   For Appellee:

     Hon. Mike McGrath, Montana Attorney General, C. Mark Fowler,
     Assistant Attorney General, Helena, Montana

     Brett Linneweber, Park County Attorney, Livingston, Montana

          Submitted on Briefs: June 18, 2008

              Decided: July 24, 2008

Filed:

            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Matthew Hill (Hill) appeals his convictions for felony criminal possession of dangerous drugs with intent to distribute and misdemeanor possession of dangerous drugs in the Sixth Judicial District, Park County.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      On the night of August 16, 2006, Captain Corey Lussier, Officer John Mathias, and Officer John Leonard of the Livingston Police Department (LPD) responded to a dispatch concerning a domestic disturbance.  The dispatch stated that the disturbance was occurring at a trailer with a fence and a truck in its yard at the corner of M and Lewis Streets in Livingston, Montana.  When officers arrived on the scene, they were unable to locate a trailer at that location, but then noticed a trailer matching that description approximately one block away.  When they approached the trailer, officers heard a female screaming.  Officer Mathias later testified that upon arriving at the trailer, he recognized it as the home of Hill and a woman named Toni Culver (Culver), both of whom were believed to be using and distributing drugs based on complaints received by the Missouri River Drug Task Force (Task Force).

¶3      According to Captain Lussier's testimony, when he arrived at the trailer he announced the presence of law enforcement through a wide open door at the rear of the trailer.  Through that door, Captain Lussier observed Hill inside the trailer passing by him in an aggressive manner towards the rear of the trailer.  Captain Lussier ordered Hill to stop, but he did not respond.  At that point, Captain Lussier could still hear a female screaming from inside the trailer, and then entered through the open door to intercept

2

Hill. Hill continued to walk towards the rear of the trailer and put his hands behind a door, at which point Captain Lussier reached for his gun. At that point, Hill stopped and began responding to Captain Lussier. As Officer Mathias later testified, after Captain Lussier entered he heard him order a male subject to come out of a bedroom in the trailer. At that point the screaming and yelling was still continuing and officers continued to be concerned about safety within the house.

¶4 After Captain Lussier detained Hill, he handed him off to Officer Mathias who spoke with him outside the trailer. Captain Lussier then continued to the living room where the yelling was coming from. Once he arrived there, he found Culver yelling and attempted to calm her down. Officer Leonard was also present at the scene but he was outside of the trailer near the front door, which was closed. Previously, Officer Mathias had radioed Officer Leonard that they were both inside the trailer, that he had a male subject running towards the rear of the trailer, and that Officer Leonard should enter the trailer as soon as he could. When Officer Leonard entered the trailer he observed Captain Lussier speaking with Culver, who was familiar to Officer Leonard from previous contacts. Upon beginning a visual safety sweep of the area, Officer Leonard noticed two glass pipes in an ashtray directly in front of him. He immediately identified them as "crank pipes"—that is, pipes used to smoke methamphetamine. When asked about the pipes, Culver stated they were hers. In speaking with Culver, Officer Leonard noticed her mannerisms were consistent with someone under methamphetamine intoxication, including rapid speech, uncontrollable body movements, rapid mood changes, and dilated pupils. Officer Leonard then seized the crank pipes as evidence.

¶5     Subsequently, Officer Mathias conducted a security sweep of the trailer, bringing Hill back inside the trailer with him. In the course of this sweep, he observed drug paraphernalia. Moreover, when Officer Mathias conducted a pat down of Hill, he discovered that Hill had drug paraphernalia on his person. Officer Mathias observed that Hill appeared under the influence of methamphetamine as he was acting nervous, appeared gaunt and thin, and his jaw muscles were convulsing rapidly. During a conversation with Officer Mathias, Hill admitted he smoked methamphetamine. He also stated that there was marijuana in the trailer, and that Culver actively sells methamphetamine from the trailer. Hill also stated that he observed Culver smoking methamphetamine in the trailer earlier that day.

¶6     In talking with Captain Lussier, Culver explained that she had been yelling at her daughter, Mistie Burks (Mistie), and that they had been in an argument. This alerted Captain Lussier that Mistie was possibly in the trailer, so he went to locate her. Captain Lussier found Mistie's room and knocked on her door. When she answered, she was crying, yelling and sobbing. While Captain Lussier was attempting to talk with Mistie, Culver was still yelling, screaming, and generally "out of control." At that point, Captain Lussier decided that Culver would have to be arrested since she continued to be disorderly. Culver was then arrested and taken to a detention center.

¶7     After Culver's arrest, officers requested a search warrant for the trailer and remained there to keep the trailer secure. During that time, Captain Lussier continued to speak with Mistie. Mistie told Captain Lussier that her mother, Culver, used to have a methamphetamine problem. Detective Steve Voss (Voss) of the Task Force soon arrived

4

at the trailer with a search warrant. During the search, Detective Voss and Officer Leonard discovered another crank pipe in Mistie's room. She was subsequently detained and taken to a youth detention center in Galen, Montana. Officer Mathias accompanied Mistie to the detention center. While awaiting medical clearance for admission, Mistie told Officer Mathias that Culver had a severe drug and alcohol problem, that Hill had made some of the drug paraphernalia found in the home, and that Culver sold drugs from the trailer.

¶8 A search of the home by officers eventually turned up a total of twenty-three items of evidence relating to drug use and the distribution of drugs, including drug paraphernalia, a digital scale, baggies, suspected buds of marijuana, and a vial containing a white crystal substance. Detective Voss, a trained narcotics investigator, performed a narcotics identification kit (NIK) test on the white crystal substance at the sheriff's office and the test positively determined the substance was methamphetamine or MDMA (commonly referred to as ecstasy). According to Detective Voss's testimony, a NIK test will give a blue result for either methamphetamine or ecstasy. However, Detective Voss's visual examination of the substance, based on his training and experience, led him to conclude that it was methamphetamine and not ecstasy, because the substance was in a crystalline form which, in his opinion, was not consistent with the appearance of ecstasy. Detective Voss also tested the suspected marijuana buds, and that test came back positive.

¶9 The State subsequently charged Hill with one felony count of criminal possession of dangerous drugs with intent to distribute based on the seized methamphetamine, and

5

one misdemeanor possession of dangerous drugs based on the seized marijuana. Prior to trial, Hill filed a motion to dismiss the charges against him on the grounds that there was not probable cause to support them. In particular, Hill argued that no drugs were seized in the trailer and that no evidence was produced showing he was involved in selling drugs. The District Court denied the motion.

¶10 Hill also filed a motion to suppress the evidence from the trailer on the grounds that it was seized in violation of his rights under the Fourth Amendment to the United States Constitution, because officers failed to knock and announce their presence prior to entering the trailer. The District Court denied that motion as well, concluding that officers did announce their presence prior to entering, and that exigent circumstances justified their entry into the trailer. On March 14, 2007, Hill filed a motion in limine seeking to limit the presentation of evidence to events which occurred on August 16, 2006, and evidence which was seized from the trailer on that date. In particular, Hill argued that any evidence of possible drugs sales or other prior bad acts would be inadmissible under M. R. Evid. 404(b) and highly prejudicial to him. The State responded that Mistie's declarations to Officer Mathias about drug use and sales of drugs from the trailer should be admitted under the transaction rule, codified at § 26-1-103, MCA. The District Court agreed with the State that Mistie's declarations were admissible under the transaction rule, but otherwise granted Hill's motion. The case proceeded to trial on March 19, 2007.

¶11 During trial, there was testimony elicited from Mistie and the officers concerning Mistie's statements to police about the use and sale of methamphetamine in the trailer

6

and Hill's knowledge of and involvement in those events. During trial, Hill registered objections to this testimony on the same grounds as set forth in his motion in limine. The District Court noted these objections for the record, but allowed the evidence to be presented.

¶12 At the conclusion of the first day of trial, after the jury was excused for the day, the State, Hill, and the District Court set about resolving some of the proposed jury instructions. Hill proposed a cautionary instruction which would have prevented the jury from speculating as to the contents of the white substance that was seized in the trailer since it was never sent to the Montana State Crime Lab for testing, but only NIK-tested by Detective Voss. The District Court denied the instruction, and informed Hill that he could present his concerns about the fact that the substance was not tested at the Montana State Crime Lab to the jury, but that it would go to the weight of the evidence, not to its underlying admissibility.

¶13 On the second day of trial, at the close of the State's case-in-chief, Hill moved to dismiss the criminal possession of dangerous drugs with intent to distribute charge on the grounds that the white substance which was alleged to be methamphetamine could not be introduced to the jury because it had not been sent to the Montana State Crime Lab for testing, and because the NIK tests performed by Detective Voss did not necessarily rule out the possibility that the substance was actually something other than methamphetamine. The District Court denied the motion from the bench stating,

> Again, that goes to weight. I think that's a legitimate concern, but it goes to the weight of the testimony. And we do have statements, here. If there hadn't been statements made that they were using meth, that meth was in

7

the trailer, I think there's even a statement from your client that there was meth in the trailer, or somebody had been using meth.

¶14 On March 20, 2007, Hill was convicted by a jury on both counts. Hill now appeals his conviction. Hill maintains that the District Court erred in denying his motion to suppress because officers failed to knock and announce their presence prior to entering the trailer as required under the Fourth Amendment. Hill also maintains that the charge of criminal possession of dangerous drugs with intent to distribute was not supported by sufficient evidence, and thus the District Court erred in denying his motion to dismiss this charge, as well as his request for a cautionary jury instruction. Additionally, Hill argues that the District Court abused its discretion and denied his right to a fair trial by allowing the introduction of prior acts without providing him written notice of the State's intent to admit such evidence as required under *State v. Matt*, 249 Mont. 136, 814 P.2d 52 (1991).

¶15 We restate the issues on appeal as follows:

¶16 **Issue One:** *Did the District Court err in denying Hill's motion to suppress?*

¶17 **Issue Two:** *Did the State present sufficient evidence to support the charge of criminal possession of methamphetamine with intent to distribute?*

¶18 **Issue Three:** *Did the District Court abuse its discretion and admit evidence of other acts in violation of M. R. Evid. 404(b), and without the written notice as required under State v. Matt?*

### STANDARD OF REVIEW

¶19 We review a district court's ruling on a motion to suppress to determine whether the findings of fact in support of its decision are clearly erroneous, and whether its

8

interpretation and application of the law is correct. *State v. Bieber*, 2007 MT 262, ¶ 20, 339 Mont. 309, ¶ 20, 170 P.3d 444, ¶ 20.

¶20    We review questions regarding the sufficiency of the evidence "to determine whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Field*, 2005 MT 181, ¶ 15, 328 Mont. 26, ¶ 15, 116 P.3d 813, ¶ 15 (quotation omitted). A motion for a directed verdict is properly referred to as a "motion to dismiss for insufficient evidence." *State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont. 517, ¶ 36, 178 P.3d 121, ¶ 36. We review de novo a district court's denial of a motion to dismiss for insufficient evidence. *McWilliams*, ¶ 37 (citing *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19). The granting of such a motion "is only appropriate if, viewing the evidence in a light most favorable to the prosecution, there is no evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Swann*, ¶ 16.

¶21    We also review de novo the grant or denial of a motion to dismiss in a criminal case. *State v. Howard*, 2008 MT 173, ¶ 8, 343 Mont. 378, ¶ 8, 184 P.3d 344, ¶ 8. Our review of a motion to dismiss is plenary, and we determine whether a district court's conclusions in support of its decision were correct. *Howard*, ¶ 8.

¶22    We review a district court's decision pertaining to the admissibility of evidence for an abuse of discretion. *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 21, 314 Mont. 303, ¶ 21, 65 P.3d 570, ¶ 21. Similarly, we review a district court's decision whether to

grant or deny a jury instruction for an abuse of discretion. *Schuff v. Jackson*, 2008 MT 81, ¶ 15, 342 Mont. 156, ¶ 15, 179 P.3d 1169, ¶ 15.

## DISCUSSION

¶23    **Issue One:** *Did the District Court err in denying Hill's motion to suppress?*

¶24    Hill argues that officers of the LPD violated his Fourth Amendment rights against unreasonable searches and seizures because they failed to knock and announce their presence prior to entering the trailer, and that the evidence seized from the trailer should have been suppressed. Hill maintains that officers were responding to a possible domestic disturbance made by a third party, and that officers were not certain of the location reported to them, so they entered the trailer of Culver and Hill apparently because they were known drug users. Then, when they approached the trailer, officers heard only a female yelling at someone, which Hill claims does not provide exigent circumstances for the officers to enter without knocking and announcing their presence. In short, Hill implies that the officers used the domestic disturbance as a pretext to enter the trailer unannounced in order to search for drugs.

¶25    The State points out several deficiencies in Hill's argument. First, the State argues that Hill essentially asks this Court to reweigh the evidence before the District Court, and does not argue that the District Court's findings were clearly erroneous, or otherwise not supported by substantial evidence. The State maintains that the testimony given by the officers at trial demonstrates that officers were certain that they were responding to the correct residence even though the dispatch initially gave the wrong address, that they did not go to the trailer simply because they knew Culver and Hill were drug users, and that

10

they did in fact announce their presence when they arrived at the trailer and heard a woman screaming. The State maintains that Hill improperly asks this Court to scrutinize the officer's subjective motivations in suggesting that the officers used the domestic disturbance as a pretext to enter Hill and Culver's trailer.

¶26 Moreover, the State maintains that exigent circumstances did exist in this case. The State notes that officers were responding to a domestic disturbance call, and that they heard a woman screaming inside the trailer. Additionally, Captain Lussier did announce his presence at the open door of the trailer, but once he noticed Hill run by him without stopping in response to an order to do so, Captain Lussier was justified in immediately entering the trailer in order to prevent physical harm to himself, the other officers, or other persons who might be in the trailer.

¶27 The Fourth Amendment to the United States Constitution and Article II, Sections 10 and 11 of the Montana Constitution, protect the citizens of this State from unreasonable searches and seizures at the hands of government agents. *State v. Anyan*, 2004 MT 395, ¶ 61, 325 Mont. 245, ¶ 61, 104 P.3d 511, ¶ 61. In Montana, the "knock and announce" rule requires that government agents knock and announce their presence prior to entering an individual's home without a warrant unless exigent circumstances are present. *Cassady v. Yellowstone Co. Mont. Sheriff Dept.*, 2006 MT 217, ¶ 31, 333 Mont. 371, ¶ 31, 143 P.3d 148, ¶ 31 (citing *Anyan*, ¶ 33). We have defined "exigent circumstances" as,

> [T]hose circumstances that would cause a reasonable person to believe that entry (or other relevant prompt action) was necessary to prevent physical harm to the officers or other person[s], the destruction of relevant

11

evidence, the escape of a suspect, or some other consequence improperly frustrating legitimate law enforcement efforts.

*Cassady*, ¶ 33 (quotation omitted).

¶28 Exigent circumstances "may not always obviate the knock and announce requirement. Law enforcement and courts still must evaluate the circumstances in each situation on a case by case basis, adhering to the 'flexible requirement of reasonableness' implicated whenever law enforcement interests are present." *Cassady*, ¶ 31 (quoting *Wilson v. Ark.*, 514 U.S. 927, 934, 115 S. Ct. 1914, 1918 (1995)). Moreover, the State bears the burden of proving exigent circumstances, otherwise the evidence seized by government agents will be rendered inadmissible. *Cassady*, ¶ 32.

¶29 Based on the circumstances of this case, we conclude that the officers did not violate Hill's rights against unreasonable searches and seizures when they entered the trailer. In the first instance, we note that the District Court found that the officers were responding to the trailer to investigate a domestic disturbance, and not for any other reason. Hill has failed to demonstrate that this finding, which was based on officer testimony at a suppression hearing, was clearly erroneous.

¶30 Secondly, we note that the District Court found, based on testimony given at the suppression hearing, that Captain Lussier did in fact announce his presence upon arrival at the trailer. While it is not clear whether Captain Lussier leaned in slightly over the open threshold to announce his presence, or whether he simply announced his presence through the open door from outside of the trailer, it is undisputed that he did announce his presence at or near the open door, and that he did not simply rush into the trailer

12

unannounced. More importantly, however, after he announced his presence, he observed Hill running by him towards the back of the trailer. When he ordered Hill to stop, Hill did not respond to Captain Lussier's command but continued toward the rear of the trailer and put his hands behind a door, out of Captain Lussier's sight. As he stood at the open threshold, Captain Lussier could still hear a woman screaming inside the trailer, but did not know where she was located or whether Hill was intending to get a weapon. Moreover, Captain Lussier did not know whether someone had already been assaulted or not. The situation was rapidly evolving and potentially dangerous.

¶31 We agree with the State that once Captain Lussier ordered Hill to stop and he failed to respond, the futility exception to the knock and announce rule supported his entry into the trailer. "The futility exception to the knock and announce rule excuses the knock and announce requirement where police officers have a reasonable suspicion that the occupants know of the presence and purpose of the police prior to their entry into the residence." *Anyan*, ¶ 51. We agree with the State that, given the continued screaming of a woman from inside the trailer which indicated an on-going domestic disturbance, continuing to wait at the open threshold after Hill failed to respond to Captain Lussier's command would have been superfluous, futile, and dangerous. Thus, the District Court did not err in denying Hill's motion to suppress.

¶32 **Issue Two:** *Did the State present sufficient evidence to support the charge of criminal possession of methamphetamine with intent to distribute?*

¶33 As noted above, Hill's motion to dismiss filed prior to trial, his request for a cautionary jury instruction, and his motion to dismiss for insufficient evidence were all

13

denied by the District Court. While the basis for the two motions and the proposed jury instruction are not identical, all three rest on the notion that there was insufficient evidence to support the charges against Hill. The genesis of Hill's argument is that Detective Voss conducted only an on-site NIK test of the seized drugs, and that the State did not send the drugs for testing at the Montana State Crime Lab before he was tried and convicted. Hill argues that because the State did not have the substances tested at the Montana State Crime Lab, whether the white substance seized from the trailer was actually methamphetamine was never proven. Thus, the District Court should have either dismissed the charge of criminal possession of dangerous drugs with intent to distribute, or, at a minimum given the proposed cautionary jury instruction.

¶34 The State urges us to affirm the District Court with respect to these rulings. The State notes, as a threshold matter, that we evaluate claims based on the insufficiency of the evidence in a light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Swann*, ¶ 16. The State goes on to point out that § 45-9-103(1), MCA, criminal possession of dangerous drugs with intent to distribute, provides that "a person commits the offense of criminal possession with intent to distribute if the person possesses with intent to distribute any dangerous drug as defined in 50-32-101." The State maintains that it provided ample *circumstantial* evidence that the white substance seized in the trailer was in fact methamphetamine through Detective Voss's testimony, including the fact that he performed NIK tests on the substance. As the State notes, in *State v. Vandersloot*, 2003 MT 179, 316 Mont. 405, 73 P.3d 174, we found that

circumstantial evidence was sufficient to support a conviction under § 45-9-101, MCA, even though no direct lab test of alleged drugs was conducted. *Vandersloot*, ¶ 34. In its case against Hill, the State presented Detective Voss's testimony concerning the NIK test, along with the entire environment and activities at the trailer, including the seized evidence (drugs, drug paraphernalia, a digital scale, and baggies which are consistent with methamphetamine distribution), as well as Mistie's statements to Officer Mathias.

¶35 We agree with the State and affirm the District Court. In general, circumstantial evidence by itself is sufficient to sustain a conviction if it is "of such a quality and quantity as to legally justify a jury in determining guilt beyond a reasonable doubt, and all the facts and circumstances [of the case are] considered collectively." *State v. Southern*, 1999 MT 94, ¶ 92, 294 Mont. 225, ¶ 92, 980 P.2d 3, ¶ 92 (quotation omitted); s*ee also State v. Merrick*, 2000 MT 124, ¶ 13, 299 Mont. 472, ¶ 13, 2 P.3d 242, ¶ 13 ("Circumstantial evidence may be used to prove any element of an offense."). Other than pointing out that the State did not have the white substance tested at the Montana State Crime Lab, Hill provides no authority demonstrating that a state crime lab analysis of alleged drugs is *required* in order to sustain a conviction under § 45-9-101, MCA, or that the circumstantial evidence presented by the State was insufficient to either support the charges in the first place, or sustain a conviction under those charges. Instead, as the State correctly notes, circumstantial evidence can be sufficient to support such a charge.

¶36 Hill fails to demonstrate that no rational trier of fact could have convicted him of the crimes with which he was charged beyond a reasonable doubt. The evidence, when considered in a light most favorable to the prosecution in the context of all the facts and

circumstances, was sufficient to sustain his conviction, even though the proof of whether the white substance seized in the trailer was methamphetamine was somewhat circumstantial. Detective Voss's expert testimony, and the result of the NIK test he performed in the field, was sufficient to support the jury's finding as well as the charges in the first place, and Hill has not demonstrated that Detective Voss's testimony was in error, or that the methods he relied upon were somehow questionable or deficient. In this regard, we note that a conviction under § 45-9-101, MCA, does not specify that any particular quantity of drugs is necessary to sustain a conviction. In cases where the precise quantity of drugs is a necessary element of the offense, state lab testing may indeed be required. *See State v. Long*, 2005 MT 130, ¶ 42, 327 Mont. 238, ¶ 42, 113 P.3d 290, ¶ 42 (Nelson, J., concurring). However, these concerns are not present in this case, and the circumstantial evidence was sufficient to sustain Hill's conviction.

¶37 Along similar lines, Hill has not demonstrated that the failure to give a cautionary jury instruction on this point was an abuse of discretion. (*See* ¶ 12.) Instead, we agree with the State that Hill is essentially attempting to have this Court make an independent determination of the credibility and relative weight of the evidence which was considered by the jury. We decline the invitation to second-guess the jury's determination in this regard. *See Merrick*, ¶ 13 (stating that "the weight and credibility of witnesses are exclusively the province of the trier of fact."). Thus, we affirm the District Court.

¶38 **Issue Three:** *Did the District Court abuse its discretion and admit evidence of other acts in violation of M. R. Evid. 404(b) and without the written notice as required under State v. Matt?*

16

¶39 Hill argues that the District Court abused its discretion and failed to provide him written notice as required under *Matt* of its intent to use prior acts against him at trial. The prior acts Hill refers to were presented through the testimony of Mistie and LPD officers, which the District Court ruled was admissible under the "transaction rule," codified at § 26-1-103, MCA, which reads as follows:

> Where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction.

"Pursuant to the transaction rule, prior acts that are inextricably linked to, and explanatory of, the charged offense are admissible notwithstanding the rules relating to other crimes evidence." *State v. Gittens*, 2008 MT 55, ¶ 37, 341 Mont. 450, ¶ 37, 178 P.3d 91, ¶ 37 (quotations omitted).

¶40 As the State notes, the statements from Mistie which are challenged by Hill all concerned her knowledge of Hill's involvement in the use and sale of methamphetamine in the trailer, and his presence and knowledge of such activity. These statements related to the count of criminal possession of methamphetamine with intent to distribute because that count was based on Hill's presence at the trailer while sales of methamphetamine were occurring, his awareness of those sales, and his personal use of drugs in the trailer—all of which gave rise to the inference that he was also involved in the sale of drugs. We agree with the State that Hill has failed to demonstrate that Mistie's statements were not covered by the transaction rule, § 26-1-103, MCA, and that the District Court abused it discretion in admitting them into evidence. Because these statements are covered by the transaction rule, the State did not need to provide Hill with written notice under *Matt*.

17

## CONCLUSION

¶41   We conclude that the District Court did not err in denying Hill's motion to suppress and that the charges against him and his conviction were supported by sufficient evidence.   We also conclude that the District Court did not abuse its discretion in admitting evidence of other acts because this evidence was covered by the transaction rule, § 26-1-103, MCA.   Thus, we affirm Hill's conviction.


/S/ PATRICIA COTTER


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE