
DA 07-0497

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 368

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TIMOTHY FABER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC 2006-013
Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender, Shannon McDonald, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Mike McGrath, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

            Thomas P. Meissner, Fergus County Attorney, Lewistown, Montana

Submitted on Briefs:  July 8, 2008

Decided:  November 10, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Timothy Faber (Faber) appeals his conviction in the Tenth Judicial District, Fergus County, for felony driving under the influence of alcohol (DUI), fourth or subsequent offense. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    At approximately 12:45 a.m. on February 18, 2006, Faber was driving his car in Lewistown, Montana, when he was stopped by Fergus County Sheriff's Deputy Josh Otto (Deputy Otto). Deputy Otto, travelling in the opposite direction of Faber on Seventh Avenue in Lewistown, noticed that Faber's car appeared to be stopped with its headlights on. At the time, it was roughly twenty degrees below zero and there were spots of snow and ice on the road. Deputy Otto later testified that he was concerned for the welfare of the driver given the weather conditions at the time. After passing Faber's automobile, he then turned his car around to follow it in order to make sure that the driver did not need assistance.

¶3    Faber drove south on Seventh Avenue at a very low speed. As he did so, he passed through three intersecting streets with stop signs. Although he stopped at each stop sign, from Deputy Otto's perspective Faber's brake lights did not appear to illuminate before, during, or after the stops. Deputy Otto testified that he then stopped Faber in order to check the condition of his brake lights. During the traffic stop, Deputy Otto noticed a smell of alcohol, and observed that Faber had difficulty retrieving requested documents. Faber did not have a license as it had been previously revoked. Deputy Otto suspected Faber was intoxicated and administered field sobriety tests.

2

Deputy Otto subsequently arrested Faber for DUI and transported him to the Lewistown Police Department. Faber subsequently provided a breath sample which showed a blood alcohol level of .146.

¶4 On February 19, 2006, Faber was charged in Justice Court with felony DUI, fourth or subsequent offense, driving with a suspended license, and operating a vehicle without liability insurance. He was later convicted and appealed to the District Court. An Information was filed in District Court on March 7, 2006. A jury trial for the DUI charge was later set for January 4, 2007. Prior to trial, Faber filed a motion to suppress all evidence gathered during Faber's arrest. The motion was based in part on the grounds that there was no particularized suspicion for the traffic stop. Faber maintained that Deputy Otto's report of the incident showed that he was not driving erratically, had not committed any moving violations, and further that there was no indication that Deputy Otto actually checked Faber's brake lights once he stopped him. Faber also argued that a review of the case law of this Court, as well as the convictions in city and justice courts in Lewistown and Fergus County from 2002 to present, showed no cases where failure to have a proper brake light formed the basis for a vehicle stop. Moreover, Faber argued that an independent evaluation of his brake lights by an auto mechanic after his arrest showed that they were working. Faber asserted that the reason his brake lights did not appear to be functioning properly during the time Deputy Otto was observing him was due to the fact that he was riding the brakes in response to the slick conditions of the streets. The District Court denied the motion. The jury convicted Faber of DUI on January 5, 2007.

¶5 The State had alleged that the current DUI charges, if proven, would be Faber's fourth DUI per § 61-8-731, MCA, and should therefore be treated as a felony instead of a misdemeanor. After his conviction, Faber's attorney requested verification of Faber's prior offenses and was initially informed there was no record of two alleged offenses which occurred in 2000 and 2001. Accordingly, Faber's attorney requested that his current conviction be treated as a second offense (a misdemeanor) instead of a fourth offense (a felony). The State resisted Faber's motion. The State pointed out that Faber's certified driving record showed the following prior convictions: (1) operating a motor vehicle with a blood alcohol concentration of .08 or greater on February 11, 2002; (2) DUI on April 16, 2001; and (3) DUI on July 3, 2000. Moreover, the State noted that it requested and received documentation of these prior convictions from Justice Court. The State argued that if Faber believed one of his prior convictions was constitutionally infirm, it was incumbent upon him to provide direct evidence establishing that his prior conviction was irregular, but that he had failed to do so. Accordingly, the State asked the District Court to either deny the motion and not grant a hearing, or direct Faber to make a showing sufficient to justify setting the matter for an evidentiary hearing.

¶6 In reply to the State's position, Faber argued that there was in fact no record of the proceedings relating to Faber's 2001 DUI conviction which occurred in Justice Court in Havre, and further, that there was no evidence he was afforded his right to an attorney and other constitutional rights during these proceedings. Although Faber conceded that his driving record showed a prior conviction, he argued that this was insufficient to justify the use of the 2001 DUI conviction for sentencing enhancement purposes. Faber

4

argued that the use of any prior convictions for sentencing enhancement purposes had to meet certain constitutional standards set by this Court, and that the absence of a record showed that this standard was not met.

¶7 To resolve this issue, the District Court held an evidentiary hearing on June 12, 2007. At the start of the hearing, Faber amended his motion to clarify that he was challenging only the 2001 DUI offense, and that he was seeking to have his current conviction treated as a third offense. Faber himself testified at the hearing. With respect to the 2001 DUI proceedings, he testified that he had been picked up on the Rocky Boy Reservation and transported to Havre for processing, but said he was never read his rights by law enforcement or given a breathalyzer test because he was told the machine was not working. He later had an appearance before Justice of the Peace Carol Chagnon, and was sentenced for the DUI. He did not recall being given any documents to sign or going through his rights with Justice of the Peace Chagnon prior to an entrance of plea or sentencing. In contrast, Faber recalled being convicted of DUI's in 2000 and 2002 before the same Justice of the Peace, and recalled being read his rights at those times.

¶8 During cross examination, the State presented evidence from the 2000 and 2002 convictions showing Faber's signature on two waiver of rights forms. However, it was unable to produce any documentation from the 2001 DUI proceedings. Nonetheless, the State questioned Faber's assertion that he was not read his rights or did not realize he had a right to an attorney at the 2001 conviction, given the documentation of the 2000 and 2002 proceedings. When questioned, Faber claimed that he did not know at the 2001 appearance that he had the right to an attorney, because he had not been given a

breathalyzer test at the time—the implication being that Faber thought he would have a right to counsel only if he had been given a breathalyzer test.

¶9 In light of Faber's testimony, the District Court concluded that Faber made a direct claim that he did not receive his rights when he pled guilty to the DUI charge in 2001, and shifted the burden to the State to prove by a preponderance of the evidence that he did have his rights read to him during the 2001 DUI proceedings and that those proceedings were not constitutionally infirm. To meet its burden, the State called Justice of the Peace Chagnon to testify. She testified that she generally recalled Faber, but did not have a specific recollection of the instances when he appeared before her. She further testified that it was her routine practice during the time the 2001 DUI proceedings occurred to read all defendants their rights and have them sign the appropriate forms. Although the State was not able to find the documentation for Faber's 2001 DUI conviction, it did produce and admit into evidence a document generated by the Hill County Justice Court showing a record of the 2001 DUI conviction.

¶10 Justice of the Peace Chagnon testified concerning the usual procedures that she would follow for defendants facing DUI charges, including advising them of their rights, the offenses for which they were charged, and the enhanced penalties for more than one DUI. Upon cross examination, Justice of the Peace Chagnon admitted that she had never seen the court-generated document showing Faber's 2001 DUI conviction, and also admitted that information regarding Faber's 2001 DUI citation could not be found in the Hill County Justice Court's records. On redirect by the State, Justice of the Peace Chagnon explained that although she had not previously seen the citation report produced

6

by the Justice Court for the hearing, it had all the information that would appear on the citation (which is the document she would normally deal with in the original file). She also testified that the handwriting at the top of the printout was from the clerk who worked for her during the time in question and had been at the Justice Court for approximately thirteen years.

¶11 After Justice of the Peace Chagnon concluded her testimony, the District Court issued its ruling from the bench and allowed the use of the 2001 DUI conviction for sentencing enhancement purposes. The District Court concluded that the State had satisfied the standard for the use of prior convictions under *State v. Snell*, 2004 MT 334, 324 Mont. 173, 103 P.3d 503. In particular, the District Court found that Justice of the Peace Chagnon's testimony established that she used the same procedures during Faber's 2000 and 2001 proceedings, and that she routinely advised defendants that they had the right to an attorney. The evidence further established that Faber had signed a waiver of rights form during the 2000 proceedings in which he acknowledged that a fourth or subsequent offense would be treated as a felony. Additionally, the computer-generated record of Faber's conviction from Hill County showed that he was convicted of DUI in 2001 and paid a fine, and qualified as a certified driving record of his Hill County conviction for DUI. From this, the District Court concluded that a preponderance of the evidence established that Faber was informed of his rights prior to pleading to the 2001 DUI charge.

¶12 The District Court further observed that the question before it was whether the lack of a record of Faber's 2001 DUI conviction necessarily led to the conclusion that

7

Faber was not advised of his rights. Under the authority of *State v. Keenan*, 2003 MT 190, 316 Mont. 493, 74 P.3d 1037, the District Court concluded that the certified driving record, Faber's testimony, and Justice of the Peace Chagnon's testimony that she would have read Faber his rights prior to receiving his plea, all supported the conclusion that Faber's 2001 DUI conviction could be used for sentencing enhancement purposes.

¶13 Faber was subsequently sentenced to a thirteen-month placement with the Department of Corrections in an appropriate correctional facility or program. Following this commitment, Faber was to be given a two-year suspended sentence. Additionally, the District Court imposed a number of conditions during Faber's suspended sentence, including a prohibition on entering casinos or playing games of chance. Faber did not object to any of these conditions at the time of sentencing. Faber now appeals the denial of his motion to suppress, the use of his 2001 DUI conviction for sentencing enhancement purposes, and the probation condition prohibiting him from playing games of chance or entering casinos.

¶14 As to his contention that the probation condition must be stricken, we note that in *State v. Ashby*, 2008 MT 83, 342 Mont. 187, 179 P.3d 1164, we held that a defendant must object to an improper (as opposed to illegal) condition at or before sentencing, and that failure to do so may result in waiver. *Ashby*, ¶ 22. By failing to object in the District Court to the restriction on entering casinos and playing games of chance, we conclude Faber has waived his right to challenge this condition on appeal. Thus, we state the remaining issues on appeal as follows:

¶15 **Issue One:** *Did the District Court err in denying Faber's motion to suppress?*

8

¶16    **Issue Two:** *Did the District Court err in denying Faber's objection to the use of his 2001 DUI conviction for sentencing enhancement purposes?*

## STANDARD OF REVIEW

¶17    We review a district court's denial of a motion to suppress to determine whether its conclusions of law are correct, and the findings of fact in support of its decision are clearly erroneous. *State v. Wing*, 2008 MT 218, ¶ 25, 344 Mont. 243, ¶ 25, 188 P.3d 999, ¶ 25.

¶18    As to the use of the 2001 conviction, our review of a district court's conclusions of law is plenary, and we review those conclusions to determine whether they are correct as a matter of law. *Keenan*, ¶ 7. Findings of fact are reviewed under the clearly erroneous standard. *Keenan*, ¶ 7. In Montana, it is well settled "that the State may not use a constitutionally infirm conviction to support an enhanced punishment, such as felony DUI." *Snell*, ¶ 25. When a defendant seeks to challenge the use of a prior conviction for purposes of sentencing enhancement, a "presumption of regularity" attaches to that conviction which the defendant may overcome with direct evidence of irregularity. *Snell*, ¶ 25. " 'Direct evidence' is that which proves a fact without an inference or presumption and which in itself, if true, establishes that fact." *Snell*, ¶ 29 (citing § 26-1-102(5), MCA). "Once a defendant produces such direct evidence, the burden then shifts to the State to prove by a preponderance of the evidence that it did not obtain the prior conviction in violation of the defendant's rights." *Snell,* ¶ 25.

## DISCUSSION

¶19    **Issue One:** *Did the District Court err in denying Faber's motion to suppress?*

9

¶20   Faber asserts that Deputy Otto lacked particularized suspicion to support the traffic stop. Faber maintains that Deputy Otto's conclusion that Faber's brake lights were not working—which was the offered justification for the stop in the first place—was not reasonable under the circumstances and that the District Court erred in according it weight. Faber argues that an affidavit he submitted from an auto mechanic who independently tested his brake lights showed that they were working during the time in question, and that his slow rate of speed on the road simply indicated that he was driving slowly and carefully and possibly riding his brakes.

¶21   The State maintains the District Court did not err and that Deputy Otto did have particularized suspicion for the traffic stop. The State argues that observation of a suspected traffic offense provides a sufficient basis for particularized suspicion, and that particularized suspicion does not require certainty on the part of the law enforcement officer, nor does it turn on whether a defendant is actually cited for a suspected violation. Instead, the State asserts all that is required is objective data from which an experienced police officer can make certain inferences, and a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing. Here, the objective data was that Faber's brake lights did not appear to illuminate when he stopped at three stop signs. This was confirmed by the District Court when it viewed a video shot by Deputy Otto showing the lack of change in the brake lights at each stop sign. The suspected wrongdoing was driving without properly functioning brake lights, a misdemeanor under §§ 61-9-206 and -511(1), MCA.

¶22 We agree with the State and affirm the District Court's denial of Faber's motion to suppress. "Whether particularized suspicion exists to justify an investigative stop . . . is a question of fact which depends on the totality of the circumstances. We use a two-step test to determine whether sufficient particularized suspicion existed to justify an investigative stop: '(1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrong doing.' " *In re License Suspension of Cybulski*, 2008 MT 128, ¶ 20, 343 Mont. 56, ¶ 20, 183 P.3d 39, ¶ 20 (other citation omitted, quoting *State v. Loney*, 2004 MT 204, ¶ 7, 322 Mont. 305, ¶ 7, 95 P.3d 691, ¶ 7). The District Court found that Deputy Otto's conclusion that Faber's brake lights were not functioning properly was based on objective data and constituted an appropriate inference from that data. Because driving without functioning brake lights is a misdemeanor under state law, Deputy Otto decision's to stop Faber was supported by particularized suspicion. As stated by the District Court,

> This case is an example of a stop for failure to have proper equipment. Even though Defendant showed that his brake lights worked, they did not appear to work as Deputy Otto looked at them. Even Defendant admits that the lights would have looked out of order to the deputy as he followed him. There was ample reason for the deputy to stop Defendant to check on his brake lights. Even though the deputy did not check them himself, the reason for the stop was appropriate.

¶23 Faber has not demonstrated that the factual findings upon which this decision was based were clearly erroneous, or that the legal conclusions in support of this decision were incorrect. Thus, we affirm the District Court.

11

¶24 **Issue Two:** *Did the District Court err in denying Faber's objection to the use of his 2001 DUI conviction for sentencing enhancement purposes?*

¶25 Faber argues that the District Court erred when it permitted the use of his 2001 DUI conviction to enhance his current conviction to a felony. He argues that his own testimony concerning his certainty that he was not advised of his rights, combined with the missing documentation of this conviction, established that he was not apprised of his rights before pleading guilty to the DUI in 2001. Faber maintains the State has failed to show that Justice of the Peace Chagnon in fact advised him of his rights at that time, and disputes the claim that the State has demonstrated the regularity of the 2001 proceedings by a preponderance of the evidence. Faber argues that this Court should vacate this prior conviction and remand his current conviction for resentencing as a misdemeanor.

¶26 The State argues that the District Court did not err. First, the State argues that Faber has not actually overcome the presumption of regularity which attaches to the 2001 proceedings because he has failed to provide direct evidence that those proceedings were irregular. The State argues that Faber's testimony was insufficient to shift the burden of proof in the first place and that the District Court's inquiry should have stopped there. The State maintains that what Faber's testimony truly established was his inability to recall the details of the 2001 proceedings, and that such testimony is insufficient to overcome the presumption of regularity.

¶27 However, assuming arguendo that Faber had shifted the burden of proof to the State, it argues that it has proven the regularity of the 2001 proceedings by a preponderance of the evidence. The State asserts that it presented evidence of the

12

regularity of that conviction through Justice of the Peace Chagnon, who testified it was her routine practice in 2001 to advise all DUI suspects of their rights, including their rights to counsel. If a DUI suspect waived his right to counsel, it was also her practice to have that individual sign a form which underlined his or her right, stating that "I . . . waive my right to have an attorney represent me." The State points out that the District Court found Justice of the Peace Chagnon's testimony credible and persuasive. Moreover, Faber had signed such a form nine months before during his 2000 DUI conviction, which was before the same Justice of the Peace. Under these circumstances, the State argues that regularity of the proceedings was proven and that it demonstrated by a preponderance of the evidence that Faber's 2001 DUI conviction was not constitutionally infirm and could be used for sentencing-enhancement purposes.

¶28 Here, the District Court arguably erred in concluding that Faber presented direct evidence that the 2001 proceedings were irregular. In *Snell*, we stated that " '[d]irect evidence' is that which proves a fact without an inference or presumption and which in itself, if true, establishes that fact." *Snell*, ¶ 29 (citing § 26-1-102(5), MCA). In *State v. Okland*, 283 Mont. 10, 18, 941 P.2d 431, 436 (1997) we held that the absence of a transcript or record was, in and of itself, insufficient to overcome the presumption of regularity. Similarly, the inability of a defendant to recall whether he previously waived his right to counsel, "does not constitute direct evidence sufficient to rebut the presumption of regularity, even in the face of a silent record." *Keenan*, ¶ 10. As the State points out, during Faber's direct examination he could only testify that he did not recall details of the 2001 proceedings. It was not until cross-examination that he

13

positively stated he was not advised of his right to counsel during those proceedings and did not know that he had a right to an attorney. Arguably, whether this testimony constituted "direct evidence" sufficient to shift the burden of proof is somewhat tenuous. However, the District Court apparently determined to afford Faber the benefit of a doubt. Because weight and credibility determinations rest with the trier of fact, we will not disturb those determinations on appeal. *See State v. Hill*, 2008 MT 260, ¶ 37, 345 Mont. 95, ¶ 37, 189 P.3d 1201, ¶ 37.

¶29 With that said, the District Court's conclusion that the State had met its burden to prove by a preponderance that the 2001 conviction did not violate Faber's constitutional rights was based in large measure on a determination that Justice of the Peace Chagnon was a credible witness, and we decline to disturb that determination as well. The District Court had before it the following evidence: (1) a certified driving record showing all of Faber's convictions; (2) a signed waiver of rights form from Faber's 2000 DUI conviction; and (3) a signed waiver of rights form for the 2002 BAC conviction. What was missing was any comparable record of the 2001 DUI conviction. Justice of the Peace Chagnon's testimony filled that gap. She testified that it was her standard procedure in 2001 to advise any DUI suspect of their right to counsel during proceedings. Moreover, the record clearly indicated that this procedure was followed approximately eight months prior, at the time of Faber's 2000 DUI conviction.

¶30 Based upon the foregoing, we hold that the District Court did not err in concluding, based upon the evidence before it and the credibility of Justice of the Peace Chagnon, that the 2001 DUI conviction could be used for sentencing enhancement

14

purposes. Faber has failed to demonstrate that any of the District Court's factual findings were clearly erroneous or that its conclusions of law were incorrect.

## CONCLUSION

¶31 By failing to object to the probation restriction related to entering casinos or playing games of chance, Faber has waived his right to challenge that probation condition on appeal. We further conclude that the District Court did not err in denying Faber's motion to suppress, or in determining that Faber's 2001 DUI conviction could be used for sentencing enhancement purposes in his current conviction. Thus, we affirm the District Court.

/S/ PATRICIA COTTER

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON